James O'BRIEN, et al., Plaintiffs,

v.

NATIONAL PROPERTY ANALYSTS PARTNERS, et al., Defendants.

No. 88 Civ. 4135 (PKL).

United States District Court,
S.D. New York.

Aug. 10, 1989.

**224**

Beigel & Sandler, New York City (Lewis S. Sandler, Herbert Beigel, Leigh R. Lasky, of counsel), Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill. (Michael J. Freed, Kenneth A. Wexler, of counsel), Chertow & Miller, Chicago, Ill. (Marvin A. Miller, Patrick E. Cafferty, of counsel), for plaintiffs.

Kaplan Kilsheimer & Foley, New York City, for defendant Howard Jackson Associates.

Debevoise & Plimpton, New York City (Mary Jo White, David W. Rivkin, Edwin G. Schallert, of counsel), Rodman W. Benedict, Associate Gen. Counsel, New York City, for defendant Price Waterhouse.

## ORDER & OPINION

LEISURE, District Judge:

Plaintiffs have brought this action against more than sixty named and unnamed defendants, claiming that their investments relating to four limited partnerships organized and sponsored by the NPA Defendants[1] were induced by allegedly fraudulent misrepresentations and omissions in connection with private placement memoranda used in the sale of partnership interests. Plaintiffs have alleged causes of action under the federal securities laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state law against the partnerships, their sponsors and managers, the general partners of the partnerships, the mortgage holders of partnership properties, a professional appraiser, and an accounting firm.

The Court approved a settlement agreement between the plaintiff class and the Settling Defendants[2] at a hearing held on July 27, 1989. At that time, the Court granted plaintiffs' oral motion to file a Second Amended Complaint.[3] Defendants Price Waterhouse ("Price") and Howard Jackson Associates, Inc., ("Jackson") were not parties to the settlement.

The action is currently before the Court on the motion of Price Waterhouse and Jackson to dismiss the First Amended Complaint pursuant to Rules 9(b) and 12 of the Federal Rules of Civil Procedure. The Court will deem these motions to dismiss as against the Second Amended Complaint (the "Complaint").

## FACTUAL BACKGROUND

Plaintiffs are investors in four different limited partnerships organized, sponsored and managed by the NPA Defendants. The limited partnerships in this case are involved with the acquisition and operation of shopping center real estate properties. Interests in the partnerships were sold by certain of the NPA Defendants beginning in 1979, through the use of private placement memoranda (the "Memoranda"),[4] that

---

1. Not all defendants named in the Amended Complaint have been served. National Property Analysts Partners filed its motion to dismiss on its own behalf and on behalf of all individuals and entities affiliated with National Property Analysts, Inc. (the "NPA Defendants"). "NPA Defendants" refers to, and is meant to include, all defendants who have been served *except* Bryn Mawr Pension Group, Manhattan Pension Group, Metallurgical Products Company Profit Sharing Plan, Fox Iron Works, Inc. Pension Trust, Milner Marketing Corp. Employees Profit Sharing Trust, Philadelphia Pension Group, New York Pension Group, Price Waterhouse, Howard Jackson Associates, Inc., and John Does 1–50.

2. The "Settling Defendants" refers to all defendants, *except* Price Waterhouse and Howard Jackson Associates.

3. The Second Amended Complaint merely conformed the First Amended Complaint to the Settlement Agreement, by redefining the class and adding additional defendants.

4. Because the Complaint repeatedly refers to the private placement memoranda as the sources of alleged misrepresentations, it is entirely appropriate for the Court to review them on a motion to dismiss. *See, e.g., Crystal v. Foy,* 562 F.Supp. 422, 427 (S.D.N.Y.1983). The Memoranda therefore are incorporated by reference for purposes of this motion. *See Feinman v. Schul-*

contained investment information including real estate appraisals by defendant Jackson and accounting projections by Price Waterhouse.

Plaintiffs allege they relied on the Memoranda in investing in the limited partnerships. Specifically, plaintiffs assert that they were led to believe, *inter alia,* that the prices the partnership paid for the properties equalled the value of the properties as represented by Jackson, and that there was at least a possibility of profit to the limited partnerships, and ultimately to the limited partners. Additionally, defendants allegedly knew that plaintiffs would not be entitled to tax benefits.

## DISCUSSION

### 1. *Rule 9(b): Failure to Plead Fraud with Particularity*

■ In a motion to dismiss a complaint for failure to plead fraud with particularity as required by Rule 9(b),[5] plaintiffs' allegations must be taken as true. *See, e.g., Luce v. Edelstein,* 802 F.2d 49, 52 (2d Cir. 1986). Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Pleadings of fraud must thus specify the time, place, speaker, and sometimes even the content of the alleged misrepresentation. *Id.* at 54. The complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robbins Co.,* 607 F.2d 545, 557–58 (2d Cir.1979),

cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) must be read in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief. *Ross v. A.H. Robbins Co.,* 607 F.2d 545, 557 n. 20 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Rule 9(b) is designed to provide a defendant with fair notice of a plaintiff's claim in order to enable a defendant to prepare a defense, protect defendant's reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9(b) is satisfied if the complaint sets forth:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and

(2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making same),

(3) the content of such statements and the manner in which they misled the plaintiff, and

(4) what the defendants "obtained as a consequence of the fraud."

*Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167, 1172 (S.D.N.Y.1985) (*quoting Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420–21 (S.D.N.Y.1978)); *See also Crystal v. Foy,* 562 F.Supp. 422, 425 (S.D.N.Y. 1983).

■ Where there are multiple defendants, the complaint must disclose the specific nature of each defendant's partic-

---

man, Berlin & Davis, 677 F.Supp. 168, 170 n. 3 (S.D.N.Y.1988) (private placement memorandum referenced as the source of fraudulent statements deemed to be incorporated by reference in the complaint). *Cf. Decker v. Massey Ferguson, Ltd.,* 681 F.2d 111, 113 (2d Cir.1982) ("Because ... plaintiff's allegations ... center upon Massey's 1975 annual report, which is in the record, we may properly refer to its contents.").

**5.** It is well settled that a claim of securities fraud under section 10(b) falls within the ambit of Rule 9(b). *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982); *Ross v. A.H.*

Robbins, Co., 607 F.2d 545, 557 (2d Cir.1979), cert. denied, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) also extends to plaintiffs' RICO claims because these claims are based wholly upon alleged predicate acts of securities fraud under section 10(b), mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343, *see Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 49–50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), and to the claims alleging common law fraud. *See, e.g., Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 576 (2d Cir.1969).

ipation in the alleged fraud. *DiVittorio, supra,* 822 F.2d at 1247. Furthermore, the allegations of fraud cannot ordinarily be based on information and belief. *Luce, supra,* 802 F.2d at 54; *Leslie v. Minson,* 679 F.Supp. 280, 282 (S.D.N.Y.1988). This pleading restriction may be relaxed, however, where the matter is peculiarly within the knowledge of the defendant. *DiVittorio, supra,* 822 F.2d 1247. When pleading on information and belief is appropriate, plaintiffs are required to include a statement of facts upon which the allegations of fraud are based. *Stern v. Leucadia National Corp.,* 844 F.2d 997, 1004 (2d Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988).

Similarly, while Rule 9(b) allows "conditions of mind" to be averred generally, plaintiffs must at least present those circumstances that provide a "minimal factual basis" for the allegations of scienter. *See, e.g., Connecticut National Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir. 1987). In other words, Rule 9(b) requires that the complaint allege specific facts which support any conclusory allegations that the misstatements complained of were intentionally fraudulent. As Judge Newman has explained:

> Although Rule 9(b) provides that intent and "other condition of mind" may be averred generally, plaintiffs must nonetheless provide some factual basis for conclusory allegations of intent. These allegations must give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent.
>
> A common method for establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so. Where motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, though the strength of the circumstantial allegations must be correspondingly greater.

*Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987) (citations omitted), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

In the present case, defendants contend that plaintiffs' securities law claims, RICO claims and common law fraud claims lack the specificity required by Rule 9(b).

## A. The Securities Claims

The Court begins by noting that the Complaint is characterized by the type of vague, conclusory allegations that Rule 9(b) was designed to discourage.[6] Plaintiffs have clearly failed to meet the requirements of Rule 9(b). Most notably, the Complaint fails adequately to allege a fraudulent scheme, and to apprise defendants Price Waterhouse and Jackson of their alleged role in the fraud; and fails specifically to plead facts to support an inference of fraudulent intent, a necessary element of plaintiffs' fraud claims.[7] The Court will address the sufficiency of the pleadings, under Rule 9(b), against Price Waterhouse and Jackson separately. However, the noted deficiencies in adequately alleging a fraudulent scheme apply to both defendants regardless of the particular subsection in which the discussion appears.

### i. *Price Waterhouse*

The Court turns first to plaintiffs allegations of securities fraud against Price Waterhouse. Price Waterhouse is alleged

---

6. For example, in Paragraph 28, plaintiffs make five separate allegations and aver that "all of [them] were contrary to the representations in the Memoranda *or* were concealed from plaintiffs and the class." (emphasis supplied). Thus, defendants are left uninformed as to whether the fraudulent conduct alleged in Paragraph 28 consists of misrepresentations or omissions and, if the former, precisely what statements are alleged to have been made and in what documents.

7. Scienter is required to be pled and proved in order to maintain a section 10(b) claim. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (negligence is insufficient for liability under section 10(b)). Scienter is also required to maintain an action for mail or wire fraud, the other predicate acts upon which plaintiffs base their RICO claims, *Beck v. Manufacturers Hanover Trust Co., supra,* 820 F.2d at 49–50, as well as common law fraud. *Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485, 502 (S.D.N.Y.1984).

to have participated in the scheme by preparing reports on financial projections for the partnerships, which were included in the Memoranda. Complaint ¶ 37. Price Waterhouse contends that the Complaint fails to inform it of the fraudulent conduct in which it purportedly participated, and fails to establish a fraudulent scheme or scienter.

The Complaint divides the defendants into the following categories. The NPA Defendants are divided into the "Sponsor Defendants," Complaint ¶ 12, and the "General Partner and Limited Partnership Defendants." Complaint ¶ 13. The remaining defendants into the following groups: (1) "Wrap Holder Defendants," Complaint ¶ 14; (2) "Accounting Defendants," Complaint ¶ 15; and (3) "Appraiser Defendants." Complaint ¶ 16. Thereafter, the complaint abandons these distinctions, using instead undifferentiated references to the "Defendants."

Plaintiffs contend that the Complaint is sufficient because it specifies that the misrepresentations and omissions occurred in the offering materials in which Price Waterhouse's financial projections appeared. Complaint ¶ 37–38. Plaintiffs claim this general allegation ties Price Waterhouse to the Memoranda, purportedly as an insider, and makes their undifferentiated pleading sufficient. Plaintiffs are mistaken.

The Court is sympathetic to the view that Rule 9(b) is especially designed to protect the reputation of accountants and other professionals from injury caused by unsubstantiated charges of fraud. *See, e.g., In re Union Carbide Corp. Consumer Products Bus. Sec. Litigation*, 666 F.Supp. 547, 557 (S.D.N.Y.1987). With respect to Price Waterhouse, repeated blanket references to "defendants" are impermissible. Other than in paragraphs 37–40 of the Complaint, which address the financial projections prepared by the managers of the partnerships but do not mention Price Waterhouse's re-

ports, the Complaint gives no indication that the general allegations against the "defendants" apply to Price Waterhouse.

■■■ Nor can plaintiffs rely on a contention that Price Waterhouse is an insider. *See Stevens v. Equidyne Extractive Industries 1980*, 694 F.Supp. 1057 (S.D.N.Y. 1988) (accountants not insiders). As a general matter, it is unnecessary to allege a specific connection between fraudulent representations in an offering memorandum and particular defendants where such defendants are insiders or affiliates participating in the offer of the securities in question. *Id.; DiVittorio, supra*, 822 F.2d at 1247. Mere conclusory allegations of insider status, however, without accompanying facts which tie a defendant to the offering materials in a specific way, will not suffice to obviate the need to specify each defendant's connection with the alleged fraudulent acts. *See DiVittorio, supra*, 822 F.2d at 1247–49; *Stevens v. Equidyne Extractive Industries 1980*, 694 F.Supp. 1057, 1062–63 [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,959, at 90,453 (S.D.N.Y. July 28, 1988).

Additionally, plaintiffs have failed to articulate how the reports and projections by Price Waterhouse were false and misleading given the cautionary language contained in the material. *See Luce v. Edelstein, supra*, 802 F.2d at 56 (statements concerning projections of potential cash and tax benefits which clearly "bespeak caution" were not found to support a section 10(b) claim).[8] In the present case, plaintiffs allegations are refuted by the very documents on which they purportedly relied. For example, the financial projections are alleged to have been "false and misleading" because they "were based on the structured transactions, namely the Master Lease and not the underlying activity of the property." Complaint ¶ 37(b). However, the projections explicitly disclosed that they were based on assump-

---

8. Plaintiffs also maintain that the cautionary language contained in the offering material does not shield defendants from a charge of fraud because this language, as boilerplate, was by its nature misleading and because defendants were insiders, with knowledge of the fraudulent

scheme. The Court finds that the Complaint is clearly deficient with respect to allegations of scienter against both defendants and therefore fails to comply with Rule 9(b) regardless of the nature of the cautionary language contained in the offering materials.

tions, including one that the pertinent properties would be leased under a master lease. In short, plaintiffs' "own source repels [their] claims." *Crystal v. Foy*, 562 F.Supp. 422, 427 (S.D.N.Y.1983). Additionally, the financial projections are alleged to have been false and misleading because they purportedly "contained language and figures designed to induce the reader to believe that the NPA partnerships were legitimate economic transactions." Complaint ¶ 37(a). The allegedly suspect language and figures are nowhere identified, nor is there any articulation of how it would have been false to indicate that the partnerships were "legitimate" economic transactions.

Moreover, plaintiffs have failed to articulate how *any* of the material relied upon was false or misleading. For example, plaintiffs claim that defendants failed to disclose that "there was no reasonable possibility of economic gain, and it was, for all practical purposes, impossible for any limited partner to recoup his cash investment." Complaint ¶ 28(a) However, plaintiffs have failed to explicate why economic gain is impossible and how defendants mislead plaintiffs into believing otherwise. Second, plaintiffs claim that defendants failed to disclose that "the fees and other expenses as stated in the Memoranda were excessive," Complaint ¶ 28(b), apparently ignoring the fact that by this very statement plaintiffs are admitting that the amount of fees and expenses was disclosed in the Memoranda. Third, plaintiffs claim that the structure of the transactions was not disclosed, including the fact that it was impossible for the investors to make a profit. Complaint ¶ 28(c). However, plaintiffs have failed to allege any specific risk or element of the transaction that was not disclosed.

Additionally, the Complaint does not mention a single specific event that would support an inference that Price Waterhouse acted with scienter. Plaintiffs proffer only conclusory allegations as to Price Waterhouse's state of mind. *See* Complaint ¶ 38. While scienter need not be alleged with great specificity, the Second Circuit continues to require that plaintiffs specifically plead those events which give rise to a strong inference that defendants had an intent to defraud, knowledge of falsity, or a reckless disregard for the truth. *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987). Allegations of fraud relating to speculative projections "must allege particular facts demonstrating the knowledge of defendants *at the time* that such statements were false." *DiVittorio, supra*, 822 F.2d at 1248 (emphasis supplied).

Plaintiffs have alleged that the financial projections were false and misleading. Complaint ¶ 37. However, there is no indication of how or when Price Waterhouse personnel supposedly knew this, and it is well settled that an inference of fraud does not arise from the mere fact that an auditor reported on allegedly inaccurate data. *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 394 (S.D.N.Y.1988). *See also Dannenberg v. Dorison*, 603 F.Supp. 1238, 1241 (S.D.N.Y.1985) (outsiders' participation in 50 allegedly fraudulent tax shelters does not permit inference of knowledge of fraud); *Ross v. Warner*, 480 F.Supp. 268, 272 (S.D.N.Y.1979). "[S]imply coupling conclusory allegations of wrongful intent with neutral assertions of false information does not effectively substitute for the particularization of the circumstances constituting the accountants' fraud as required by the rule." *Weinberger v. Kendrick*, 451 F.Supp. 79, 84 (S.D.N.Y.1978). The gist of the Complaint against Price Waterhouse is an alleged failure to investigate. *See* Plaintiffs' Memorandum at 23. However a purported failure to investigate "[does] not rise above the level of negligence, which is legally insufficient." *The Limited, Inc. v. McCory Corp.*, 683 F.Supp. 387, 394 (S.D.N.Y.1988); *Oleck v. Fischer*, [1979] Fed.Sec.L.Rep. (CCH) ¶ 96,898 at 95,701, 1979 WL 1217 (S.D.N.Y. 1979), *aff'd*, 623 F.2d 791 (2d Cir.1980).[9]

---

9. The particularity requirements of Rule 9(b) apply to allegations of aiding and abetting fraud. *Andreo v. Friedlander, Gaines, Cohen,*

651 F.Supp. 877, 880 (D.Conn.1986). Plaintiffs must thus allege with particularity the existence of a primary fraud, Price Waterhouse's knowl-

The generalized conclusory allegations of the Complaint are inadequate to support a strong inference that Price Waterhouse was an insider or had knowledge of the fraud. Plaintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud. In this case, the failure to differentiate the role of Price Waterhouse in the purported fraud and the lack of factual allegations which could support an inference of scienter mandates dismissal of the securities fraud claims against Price Waterhouse.

Accordingly, plaintiffs' claims of securities fraud against Price Waterhouse are insufficient under Rule 9(b), and must be dismissed.

ii. *Howard Jackson Associates, Inc.*

 Finally, as to defendant Jackson, the Complaint also fails to meet the requirements of Rule 9(b). Plaintiffs contend that the value of the property was less than the appraised value stated in the Memoranda. Complaint ¶ 41. However, nowhere in the Complaint is it alleged that Jackson knew at the time that these appraisals were made that they were inflated. In their brief, plaintiffs contend that Jackson should have recognized that "there was something wrong with a transaction where the purchase price of a property increased substantially in a very short period of time through the mechanism of a series of transfers of related parties." Plaintiff's Memorandum of Law at 26. Additionally, plaintiffs assert that Lipkin and Brownstein, "knowing that the potential investors in the limited partnerships would evaluate the anticipated tax benefits as well as the

earning potential of the prospective investments, enlisted the aid of Jackson to prepare inflated appraisals to project fair market value of the properties which purportedly imparted the price paid by the partnerships." Plaintiffs' Memoranda at 5. These statements encompass a level of particularity that does not exist in the Complaint and it is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss. *See, e.g., Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 526 (S.D.N.Y.1977); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).[10]

The generalized conclusory allegations of the Complaint are inadequate to support a strong inference that Jackson had knowledge of the fraud. As stated previously, plaintiffs cannot satisfy Rule 9(b) by masking the lack of factual allegations against each defendant through broad allegations which combine the acts of several defendants to create the impression that all engaged in every aspect of the alleged fraud. In this case, lack of factual allegations which could support an inference of scienter mandates dismissal of the securities fraud claims against Jackson.

Plaintiffs have done nothing more than plead knowledge and intent in the most general and conclusory terms. Plaintiffs have provided no factual basis demonstrating why the alleged misrepresentations were false or that Jackson knew they were false at the time made. The fatal flaw in plaintiffs' claims is that there is not a single factual allegation in the Complaint which supports plaintiffs' inference of fraud.

---

edge of the fraud, and Price Waterhouse's substantial assistance in the fraud, in order to properly plead their allegations of aiding and abetting. *Id.* The infirmities identified by the Court in plaintiffs' allegations of securities fraud, RICO and common law fraud also afflict plaintiffs' allegation that Price Waterhouse is an aider and abettor.

**10.** The particularity requirements of Rule 9(b) apply to allegations of aiding and abetting fraud. *Andreo v. Friedlander, Gaines, Cohen,*

651 F.Supp. 877, 880 (D.Conn.1986). Plaintiffs must thus allege with particularity the existence of a primary fraud, Jackson's knowledge of the fraud, and Jackson's substantial assistance in the fraud, in order properly to plead their allegation of aiding and abetting. *Id.* The infirmities identified by the Court in plaintiffs' allegations of securities fraud, RICO and common law fraud also afflict plaintiffs' allegation that Jackson is an aider and abettor.

It is undeniably true that "each 9(b) case necessarily rests on its particular facts." *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978). In the present case, the Complaint fails to adequately allege a fraudulent scheme, and fails specifically to plead facts to support an inference of fraudulent intent on the part of Jackson, a necessary element of plaintiffs' securities fraud claims.

In sum, the Complaint fails adequately to allege a fraudulent scheme, apprise Jackson of its alleged role in the fraud and fails specifically to plead facts to support an inference of fraudulent intent. As a result, plaintiffs' securities claims against Jackson are dismissed under Rule 9(b).

### B. RICO Claims

Turning next to plaintiffs' RICO claims, the Court finds that these claims do not pass muster under Rule 9(b). "[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions...." *Plount v. American Home Assurance Co.*, 668 F.Supp. 204, 206 (S.D.N.Y.1987). Plaintiffs base their RICO claims on the predicate acts of securities fraud, mail fraud and wire fraud. The Rule 9(b) deficiencies in plaintiffs' securities claims, discussed above, which justified dismissal of those claims, also warrants their dismissal as predicate acts for plaintiffs' RICO claims.

Nor can plaintiffs' RICO claims be based on the predicate acts of mail or wire fraud. As stated above, the mail and wire fraud statutes require, *inter alia*, a showing of intentional fraud. *Beck, supra*, 820 F.2d at 49. Here, as with the securities claims, plaintiffs have failed to plead facts giving rise to a "strong inference" of fraud. *See Connecticut National Bank, supra*, 808 F.2d at 962; *Ross, supra*, 607 F.2d at 557–58.

Beyond this, plaintiffs have ignored the fundamental requirements of Rule 9(b) mandating that fraud allegations specify the time, place, manner, and content of the allegedly fraudulent mailings and communications. *See DiVittorio, supra*, 822 F.2d at 1247. Specifically, the Court notes that the allegations in ¶¶ 76(a)(iii) and 76(b)(i), which are based on information and belief do not meet the requirements of Rule 9(b). There is no reason to believe that the alleged mailings and communications "with third parties and with class members" constitute matters "peculiarly within the opposing party's knowledge." *See DiVittorio, supra*, 822 F.2d at 1247. Moreover, even if they did, such allegations must be accompanied by a statement of the facts upon which the belief is based. *Id.* No statement of accompanying facts is provided in the Complaint. *See Luce, supra* 802 F.2d at 54 n. 1 (allegations of fraud cannot be based upon information and belief absent special circumstances that must be pleaded). Moreover, the allegations in ¶ 76(a)(ii) fail to particularize "which defendants used mail or wire services, what was transmitted, when it was transmitted, or to whom it was sent." *See Andreo*, 651 F.Supp. at 882.

In view of the deficiencies in plaintiffs' allegations of mail and wire fraud, these allegations must be dismissed. Since plaintiffs' RICO claims are based on allegations of fraud, the dismissal of the fraud allegations for noncompliance with Rule 9(b) warrants dismissal of the RICO claims.

### C. Common Law Fraud

Finally, plaintiffs' common law fraud claims rest on the allegations relied upon by plaintiffs to support their claims of securities fraud. Complaint ¶ 62–65. As plaintiffs' securities claims have been dismissed pursuant to Rule 9(b), their claim of common law fraud must likewise be dismissed. *See, e.g., Stevens v. Equidyne Extractive Industries, Inc.*, 694 F.Supp. 1057, 1068 [Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 93,959 at 90,457 (S.D.N.Y. July 28, 1988).

### 2. *Failure to State a Claim*

Additionally, Price Waterhouse and Jackson have moved, pursuant to Fed.R.Civ.P. 12, to dismiss plaintiffs' Section 17(a) claims, as no private right of action exists thereunder; to dismiss the securities fraud

claims as time barred by the various statute of limitations; to dismiss the request for declaratory relief; and to dismiss the pendent state law claims.

## A. Section 17(a) Claims

This Court has now taken the position, in accord with recent and ever-increasing case authority, that there is no private right of action under Section 17(a) of the '33 Act. *See, e.g., Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985) (Friendly, J.); *Goldman v. McMahan, Brafman, Morgan & Co.,* 706 F.Supp. 256, 258 (S.D.N.Y.1989). *See also, Eickhorst v. American Completion and Development Corp.,* 706 F.Supp. 1087 (S.D.N.Y.1989) ("[T]he Court is aware of no recent voice substantively arguing the correctness of the conclusion that section 17(a) carries with it an implied private right of action.") Consequently, plaintiffs' claims against defendants based upon § 17(a) are hereby dismissed with prejudice.

## B. Statute of Limitations

Defendants contend that the majority of plaintiffs' securities claims are barred by the various statutes of limitations. Plaintiffs, in response, assert that their securities claims have not lapsed because the statute of limitations for fraud claims begins to run only when they have knowledge of facts which in the exercise of reasonable diligence would lead to actual knowledge of fraud. Plaintiffs' Memorandum at 49. Plaintiffs contend that the necessary facts suggesting fraud were not available to them until they learned of the September 28, 1987 IRS report criticizing the partnerships. Alternatively, plaintiffs argue that the statutes of limitations were tolled by the doctrine of fraudulent concealment. Complaint ¶¶ 48–53. Although the Court has already dismissed the Complaint for failure to plead fraud with particularity, in the interest of judicial economy, it will now address the deficiencies in plaintiffs' pleading of the discovery doctrine and fraudulent concealment.

Plaintiffs must make "distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made." *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 88 (2d Cir.) (Friendly, J.), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Plaintiffs do assert, in one sentence, that "the facts surrounding their investment" were learned "shortly before the filing of this Complaint" when they received "Internal Revenue Service Agents Reports." Complaint ¶ 53. This amorphous description does not comport with the specificity required by Rule 9(b). In the present case, the Court is unable to determine what facts lead to plaintiffs' "discovery" of the fraudulent scheme. It is unclear whether the facts that supposedly form the basis of the fraudulent scheme alleged in plaintiffs' Complaint were available to plaintiffs at the time of the allegedly fraudulent conduct.

Additionally, plaintiffs generalized and conclusory allegations of fraudulent concealment do not satisfy the pleading requirements of Fed.R.Civ.P. 9(b). *Armstrong v. McAlpin,* 699 F.2d 79, 88–89 (2d Cir.1983); *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 87 (2d Cir.1961). Paragraph 49 of the Complaint lists five separate "acts" that "among other things" purportedly constitute defendants fraudulent conduct which comprise fraudulent concealment. These are:

(a) promoting substantially identical investments in subsequent years, making the same material misrepresentations and omissions;

(b) failing to provide Plaintiffs and the class with adequate documentation, written information, or oral information regarding their investments;

(c) repeatedly representing or implying that there would be successful defense of tax audits;

(d) retaining the law firm of Arnold and Porter to represent the Partnerships before the IRS at no cost to the limited partners; and

(e) renegotiating the wraparound mortgages in January 1988 which purportedly improved the economic benefits to the limited partners.

Complaint ¶ 49.

Initially, the Court notes that the failure of plaintiffs to identify specifically which of the individual defendants committed any of the above enumerated acts of concealment is fatal. Allegations that *other* defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against *all* defendants. "The doctrine of fraudulent concealment tolls the statute of limitations *only* as to those defendants who committed the concealment." *Bingham v. Zolt,* 683 F.Supp. 965, 975 (S.D.N.Y.1988) (emphasis added). Thus, a plaintiff may not use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in affirmative fraudulent acts to conceal. *Greenfield v. Kanwit,* 87 F.R.D. 129, 132 (S.D.N.Y.1980).

In response, plaintiffs invoke their allegation of a RICO conspiracy and assert that defendants Price Waterhouse and Jackson acted in concert with others who did actively conceal. Plaintiffs' Memorandum at 58–59. However, a bare conspiracy allegation is insufficient to comply with the applicable demand of Rule 9(b), and the separate alleged RICO conspiracy is, in any event, different from a conspiracy to conceal fraud. *See Greenfield, supra,* 87 F.R.D. at 132.

Additionally, plaintiffs' allegations of fraudulent concealment are insufficient under Rule 9(b) as they fail to specify the time, place, speaker, or even the content of alleged misrepresentations, and fail to provide any factual basis whatsoever for conclusory allegations of fraud. *See, e.g., Armstrong v. McAlpin, supra,* 699 F.2d at 88–89; *DiVittorio, supra* 822 F.2d at 1247. For example, plaintiffs have not identified the "identical investments" that purportedly served as vehicles for the fraud, which

defendants promoted these investments, the content of the alleged misrepresentations or even whether plaintiffs had any knowledge that these "identical investments" were being promoted by defendants. As to ¶ 49(b), plaintiffs have failed to submit any factual basis to support plaintiffs' contention that the absence of undefined information or documentation contributed to the alleged fraudulent concealment.

Accordingly, upon the filing of an amended complaint, plaintiffs allegations concerning their discovery of the fraud and fraudulent concealment should be pleaded in accordance with this opinion.[11]

### C. Declaratory Relief

Plaintiffs seek a declaratory judgment from the Court voiding "the various mortgage obligations from the NPA partnerships to the defendants" on the grounds that these mortgage obligations resulted from defendants alleged fraudulent conduct in the inducement of plaintiffs' investments in the partnerships. *See* Complaint ¶¶ 83–85. As discussed above, plaintiffs' allegations of fraud fail to satisfy the pleading requirements of Fed.R.Civ.P. 9(b) and cannot serve as the basis of any properly pled allegations of fraud. Accordingly, plaintiffs' claim for declaratory relief must be dismissed.

The Court notes that the NPA Defendants owe no mortgage obligations to either Price Waterhouse or Jackson. Therefore, plaintiffs must specify whether defendants Price Waterhouse or Jackson are encompassed under its request for declaratory relief.

### D. Pendent State Law Claims

Plaintiffs' remaining claims are pendent state law claims. Because these pendent claims provide no other basis for federal jurisdiction, and because no considerations of judicial economy would be served at this

---

11. Plaintiffs are reminded that the doctrine of fraudulent concealment cannot be invoked where plaintiffs have notice of the facts underlying their claims. Thus, where an offering memorandum discloses the transactions that subse-quently lead to IRS challenges, plaintiffs' efforts to rely on an IRS report as the source of discovery of fraud are insufficient. *See Bender v. Rocky Mountain Drilling Associates,* 648 F.Supp. 330, 334–35 (D.D.C.1986).

stage of the litigation by retaining jurisdiction over the pendent claims, those claims are likewise dismissed. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Mastercraft Industries Inc. v. Breining,* 664 F.Supp. 859, 861 (S.D.N.Y. 1987); *In Re Investors Funding Corp. of N.Y. Securities Litigation,* 523 F.Supp. 550, 560 (S.D.N.Y.1980).

### CONCLUSION

Defendants' motions to dismiss the Complaint, pursuant to Fed.R.Civ.P. 9(b), are granted. Plaintiffs may file and serve an amended complaint within sixty (60) days from the effective date of this opinion. Plaintiffs' Section 17(a) claims are hereby dismissed with prejudice.

SO ORDERED.