Peter G. SCHICK, et al., Plaintiffs,

v.

**ERNST & YOUNG, Defendant.**

**No. 90 Civ. 1005 (RWS).**

United States District Court, S.D. New York.

Jan. 10, 1992.

Beigel & Sandler, Ltd., P.C., New York (Marilyn S. Neiman, of counsel), for plaintiff.

Ernst & Young, New York City (John Matson, Deputy Gen. Counsel, Eric H. Zagrans, Associate Gen. Counsel, Michael J. Eng, Asst. Gen. Counsel, of counsel), for defendant.

## OPINION

SWEET, District Judge.

Defendant Ernst & Young ("E & Y") has moved to dismiss the amended complaint for failure to plead fraud with particularity and for lack of subject matter jurisdiction.[1] For the following reasons, the motion is granted.[2]

*The Parties*

The plaintiffs (the "Investors") purchased interests between 1980 and May 1986 in various limited partnerships which were involved in the business of buying, breeding and selling thoroughbred racehorses and bloodstock (the "Limited Partnerships"). The Investors and others have sued the organizers, promoters and managers of the Limited Partnerships in related actions for alleged securities fraud and other misdeeds. *E.g., Bruce v. Martin,* 87 Civ. 7737 (RWS), *Thornock v. Kinderhill*

---

1. Although E & Y also claims to be moving to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted, because its papers do not put forth any arguments directed at dismissal on that ground, the appropriateness of 12(b)(6) dismissal shall not be addressed in this opinion.

2. E & Y has also moved to dismiss the Amended Complaint as time-barred under *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321, *reh. denied,* —— U.S. ——, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). This motion shall not be addressed due to recent legislation that effectively bars the retroactive application of *Lampf* to

*Corp.,* 88 Civ. 3978 (RWS). The Investors and their claims in this action and the related actions are described in further detail in prior opinions of this court. *See, e.g., Schick v. Ernst & Whinney,* No. 90 Civ. 1005, slip op., 1991 WL 8543 (S.D.N.Y. Jan. 18, 1991) ("*Schick I* ").

Defendant E & Y is a national accounting firm alleged to have provided auditing, accounting, tax and related financial advice and services to the Limited Partnerships, Kinderhill Corporation, Kinderhill Select Bloodstock, Inc., Kinderhill Financial Services, and Kinderhill Investment Company (together, the "Kinderhill Entities") between 1985 and 1988.

Thomas A. Martin ("Martin") is a citizen of the State of New York who was a general partner of the Limited Partnerships.

The Kinderhill Corporation ("Kinderhill") is a Delaware corporation that was a general partner of the Limited Partnerships.

Kinderhill Select Bloodstock, Inc. ("Select") is a Delaware corporation.

*Prior Proceedings*

The Amended Complaint asserts claims against E & Y alleging primary liability for securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, common law fraud, and various other state law claims. In an opinion and order of January 18, 1991, *Schick v. Ernst & Whinney,* No. 90 Civ. 1005 (RWS), slip op., 1991 WL 8543 (S.D.N.Y. Jan. 18, 1991) ("*Schick I* "), this court dismissed the original complaint pursuant to Rules 9(b) and 12(b)(6),

---

cases pending when that decision was handed down on June 19, 1991. *See* Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L. No. 102–242, 105 Stat. 2236 (to be codified at 15 U.S.C. § 78aa–1). This legislation has the effect of limiting statute of limitations defenses in these pending actions to "the limitation period provided by the laws applicable n the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." *Id.* For cases pending in this Circuit, that law is statute of limitation provided by state law, including borrowing statutes. This issue has not been briefed by the parties.

Fed.R.Civ.P. as against E & Y with leave to replead, and as against defendants Key Bank and Peat Marwick Main & Co. ("Peat Marwick") with prejudice. On April 5, 1991, *Schick I* was modified to the extent of allowing the Investors to replead a claim against E & Y for primary liability under § 10(b) and Rule 10b–5. *Schick v. Ernst & Whinney*, No. 90 Civ. 1005 (RWS), slip op., 1991 WL 61074 (S.D.N.Y. Apr. 5, 1991). The Investors filed the Amended Complaint on May 7, 1991.[3]

*The Facts*

The Amended Complaint alleges that between 1980 and mid–1986, Martin and Kinderhill, the general partners of the Limited Partnerships, organized approximately twenty-six limited partnerships in the business of thoroughbred breeding and racing. Through these partnerships, the Investors allege, Martin and Kinderhill perpetrated a fraud against them by means of a "Ponzi scheme." According to the Amended Complaint, Martin and Kinderhill continually formed new limited partnerships and caused them to buy and sell assets between each other at unrealistic prices to artificially inflate the Kinderhill entities' asset base thus making them appear successful and encouraging investment in the new limited partnerships. Sales of interests in the limited partnership were promoted through private placement memoranda (the "Partnership PPMs") and other sales literature that contained allegedly false and misleading representations and omitted to state material facts, resulting in the presentation of a favorable picture of the financial health of the limited partnerships. Among other things, the Partnership PPMs are alleged to have failed to disclose the large volume of interpartnership transactions at artificially set prices, Martin's siphoning of funds, successive pledging and assignment of promissory notes to banks and pyramiding of these notes by using funds from such assignments to acquire assets from existing limited partnerships which assets

in turn were pledged to banks for additional financing. The Amended Complaint alleges that the Investors purchased interests in the Limited Partnerships through contributions of approximately $90,000,000 in the form of cash and notes. The Amended Complaint further alleges the total loss of these investments.

E & Y's allegedly fraudulent activities relate to an exchange offer consummated in early 1987 whereby Select was formed to acquire all of the assets of the Limited Partnerships in exchange for common stock of Select (the "Select Roll–Up"). According to the Amended Complaint, the Investors exchanged their Limited Partnership interests for shares in Select in reliance on a private placement memorandum and supplements thereto (the "Select PPM"), issued on October 10, 1986, and on the audited consolidated balance sheet of the Kinderhill Corporation and its subsidiaries dated June 30, 1986 (the "June 1986 Balance Sheet") which was contained in the Select PPM and which was allegedly prepared by E & Y with knowledge that it would be included in and used by investors reviewing the Select PPM.

The Amended Complaint alleges that the Select PPM and the June 1986 Balance Sheet contained material misrepresentations and omitted material information upon which the Investors relied in acquiring their interests in Select. Because E & Y is not alleged to have participated in the preparation of other parts of the Select PPM, only those misrepresentations in and omissions from the June 1986 Balance Sheet shall be considered.

In the June 1986 Balance Sheet, E & Y is alleged to have:

(1) "Substantially" overstated the current assets of Kinderhill in the amount of accounts receivable due from the Limited Partnerships, which accounts receivable were allegedly overstated because they

---

3. Due to apparent inadvertent administrative error, the original filed copy of the Amended Complaint is absent from the court file, and no record of filing appears on the docket sheet. Nevertheless, because all parties have treated the Amended Complaint, which does bear a stamp indicating that it was received by the court on May 7, 1991, as filed, it shall be deemed filed as of that date.

were generated as part of a Ponzi scheme. Amended Complaint ¶ 34(a).

(2) Failed to disclose the routine nature of affiliated transactions through which the Limited Partnerships bought and sold bloodstock; the percentage of total transactions that these transactions comprised; the fact that bloodstock in many cases could not bring a comparable price at public auction and that the bloodstock were priced based on appraisals that did not accurately reflect their fair market value at the time of affiliated transactions. *Id.* ¶ 35.

(3) Represented that the consolidated balance sheet in the June 1986 Balance Sheet fairly represented the financial position of Kinderhill and related subsidiaries when it in fact did not because it did not include, consistent with generally accepted accounting practices, "going concern" and "liquidity" qualifications that would have stated that the Limited Partnerships as rolled-up would be unable to continue profitably in business without engaging in related transactions, that the Limited Partnerships were illiquid and that Kinderhill was insolvent, unable to make payments on existing loans as they came due and could not continue as a going concern and that bloodstock that generated accounts receivable and payable was pledged to Key Bank as security for loans. *Id.* ¶ 38(c). The Amended Complaint also alleges that the June 1986 Balance Sheet omitted to disclose the amounts of loans extended to the Limited Partnerships for which Kinderhill was liable as general partner. *Id.* ¶ 37(c).

(4) failed to disclose Kinderhill's liabilities as indemnitor of certain sureties.

*Discussion*

E & Y argues that the Amended Complaint fails, like the original complaint, to plead the federal securities law and common law fraud claims in conformity with the particularity requirements of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)").

Rule 9(b) states that:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

■ To further the Rule's generally recognized purposes of giving a defendant adequate notice of a plaintiff's claim to prepare a defense, protecting defendants from baseless claims that might otherwise damage their reputations and reducing the number of "strike suits" filed by plaintiffs, *Schick I,* slip op. at 7 (citing *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *Di Vittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242 (2d Cir.1987); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)); *see also O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 227 (S.D.N.Y. 1989) ("Rule 9(b) is especially designed to protect the reputation of accountants and other professionals from injury caused by unsubstantiated charges of fraud."), allegations of fraud must specify with particularity the fraudulent statement or omission, "the time, place and content of the alleged misrepresentations," *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Morin v. Trupin,* 778 F.Supp. 711, 716 (S.D.N.Y. 1991), and the nature of the defendant's alleged participation in the fraud." *Di Vittorio,* 822 F.2d at 1247; *Luce,* 802 F.2d at 55. Additionally, the complaint must allege factual circumstances that give rise to a "strong inference" that the defendant had the requisite fraudulent intent. *O'Brien v. National Property Analysts Partners,* 936 F.2d 674, 676 (2d Cir.1991). Such an inference may arise if a plaintiff identifies circumstances indicating conscious behavior by the defendant. *Cosmas,* 886 F.2d at 13.

Rule 9(b) must be read, however, in conjunction with Rule 8, which requires a "short and plain statement of the claims showing that the pleader is entitled to relief." *O'Brien,* 719 F.Supp. at 225. As this court wrote in the related case of *Bruce v. Martin,* 691 F.Supp. 716, *mod-*

*ified on reh.*, 702 F.Supp. 66 (S.D.N.Y. 1988), "the rule requires no more than that the complaint give 'each defendant notice of precisely what he is charged with.'" *Id.* at 722 (quoting *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir.1985)).

In determining whether to dismiss a complaint on Rule 9(b) grounds, the court should assume plaintiff's allegations to be true and should draw all inferences in favor of the pleader. *O'Brien*, 936 F.2d at 676–77; *Cosmas*, 886 F.2d at 11.

The Amended Complaint's reference to the June 1986 Balance Sheet "satisfies 9(b)'s requirements as to the identification of the time, place, and content of the alleged misrepresentations," *Luce*, 802 F.2d at 55; *Bruce*, 691 F.Supp. at 722, and its allegation that E & Y prepared the June 1986 Balance Sheet satisfies the Rule's requirement that the pleadings inform the defendant of the nature of its involvement in the alleged fraud, *Di Vittorio*, 822 F.2d at 1247; *Luce*, 802 F.2d at 55.

Nevertheless, with respect to the allegation of fraud by the "significant[ ] overstate[ment]" of accounts receivable, the Amended Complaint fails to adequately particularize the alleged misrepresentations or omissions themselves. E & Y correctly argues that this pleading is insufficient because it fails to allege the amount of the purported overstatement. *See Quantum Overseas, N.V. v. Touche Ross & Co.*, 663 F.Supp. 658, 667 (S.D.N.Y.1987) ("[Plaintiff] must 'allege the amount ... of such "overstatement".... The general allegations that assets were overstated is clearly inadequate.'" (quoting *Decker v. Massey–Ferguson, Ltd.*, 534 F.Supp. 873, 880–81 (S.D.N.Y.1981), *aff'd in pertinent part*, 681 F.2d 111, 116 (2d Cir.1982)); *Seiden v. Butcher*, 458 F.Supp. 81, 83 (S.D.N.Y. 1978) (not sufficient simply to allege "overvaluation;" plaintiff must specify what is overvalued, the amount of the overvaluation and facts underlying allegation that assets were "knowingly" overvalued). The Investors respond that the Amended Complaint "clearly" alleges that the accounts receivable were overstated in the total amount of receivables due from Kinderhill

affiliates ($11,236,574) because, as a product of a Ponzi scheme, it was unlikely that any accounts receivable from the Limited Partnerships would be properly repaid. *See* Investors' Memo. in Opp. at 6 n. 5. "Clearly" as the Investors themselves may be able to extrapolate this allegation, it does not appear on the face of the pleadings. Moreover, the Amended Complaint itself belies this assertion where it states that "the accounts receivable from the affiliated Kinderhill limited partnerships were *significantly* overstated. The accounts receivable were in fact of *minimal* value because they were generated as part of the Ponzi scheme...." Amended Complaint ¶ 34(a) (emphasis added).

The Amended Complaint also fails to particularize E & Y's allegedly fraudulent omission to disclose the routine nature of affiliated transactions and the inflated prices at which they took place. By the Amended Complaint's own admission, "the June 1986 Balance Sheet disclosed that Kinderhill engages in numerous business transactions with the Kinderhill limited partnerships at prices which might have been different if such transactions had taken place with unrelated third parties." Amended Complaint ¶ 35. This disclosure refutes the allegation that the omission was fraudulent. *Cf. O'Brien*, 719 F.Supp. at 227–28 (cautionary language in offering memorandum refutes allegation that projections were fraudulent). The disclosure also calls into question the adequacy of the Amended Complaint's pleading of E & Y's scienter on this point, as it indicates that any omission was not the result of "conscious behavior" to defraud.

Furthermore, the Amended Complaint fails to meet Rule 9(b)'s standards for pleading E & Y's scienter with respect to the allegations that E & Y omitted to include going concern and liquidity qualifications in the June 1986 Balance Sheet. It is well settled that an inference of fraud does not arise from the mere fact that an auditor reported on allegedly inaccurate data, *see, e.g., O'Brien*, 719 F.Supp. at 228 (citing *The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 394 (S.D.N.Y.1988)), and that

knowledge of the fraud cannot be pleaded in generalized conclusory terms, *id.* at 229. The plaintiff must specifically allege "the events which give rise to a strong inference that the defendant had knowledge of the misrepresentations or omissions." *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 279–80 (S.D.N.Y.1990) (citing *Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980)). In the context of lawsuits brought against accountants, fraudulent intent or recklessness rising to the level of conscious behavior is required to underpin a claim under § 10(b). *Id.* at 280.

The Amended Complaint does provide a factual basis for inferring that E & Y knew: (1) about the extensive nature of transactions between the Limited Partnerships, Amended Complaint ¶¶ 42(a) and (b); (2) that bloodstock transactions often took place at values above the market, *id.* ¶ 42(c); (3) that the liquidity position of the Limited Partnerships as of December 31, 1984 was "questionable," as informed by Kinderhill's prior accountant at Peat Marwick in October of 1985 and as "acknowledged" in E & Y's unspecified "work papers, management letter and memoranda for the 1985 year," *id.* ¶ 43. The crux of the Investors' claim that the Limited Partnerships were illiquid and that Select, as rolled up, could not continue as a going concern, however, relates to the inability of Kinderhill to pay its debts as they became due, and various cross collateralizations, all of which the Amended Complaint alleges was omitted from the June 1986 Balance Sheet. *See id.* ¶ 37. Nevertheless, the Amended Complaint states no facts raising an inference that E & Y knew about these loans, and, by extension, about Select's illiquidity or lack of ability to continue as a going concern.

Finally, the Amended Complaint is completely devoid of particular facts from which it can be inferred that E & Y had the requisite scienter regarding Kinderhill's liabilities as an indemnitor of various sureties. The allegation that "Ernst & Young had knowledge of this material fact [that Kinderhill had guaranteed payment of the investor notes] through conversations with Martin and other Kinderhill employees and by review of the guarantees themselves," Amended Complaint ¶ 39(a), is not sufficiently particular under the requirements of Rule·9(b).

In addition to the claim under § 10(b) and Rule 10b–5 and the claim for common law fraud, the Amended Complaint asserts state law claims for breach of fiduciary duty and negligence. Because the federal claim is hereby dismissed for failure to satisfy the requirements of Rule 9(b), the state law claims are dismissed for lack of pendent jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

*Conclusion*

For the foregoing reasons, the Amended Complaint is dismissed with leave to replead.

It is so ordered.