James O'BRIEN, Sheldon Friedman, Eugene Gans, Sheldon Smith, James Errant, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

PRICE WATERHOUSE and Howard Jackson Associates, Inc., Defendants.

No. 88 Civ. 4153 (PKL).

United States District Court, S.D. New York.

June 27, 1990.

Beigel & Sandler, Ltd., New York City (Herbert Beigel, Bijan Amini, of counsel), Much Shelist Freed Denenberg Ament & Eiger, P.C. (Michael J. Freed, Kenneth A. Wexler, of counsel), Chertow & Miller (Marvin A. Miller, Patrick E. Cafferty, of counsel), Chicago, Ill., for plaintiffs.

Debevoise & Plimpton (Mary Jo White, David W. Rivkin, Edwin G. Schallert, of counsel), Rodman W. Benedict, Associate Gen. Counsel Price Waterhouse, New York City, for defendant Price Waterhouse.

Kaplan & Kilsheimer, New York City (Frederic S. Fox, Jonathan K. Levine, of

counsel), for defendant Howard Jackson Associates, Inc.

## ORDER & OPINION

LEISURE, *District Judge*:

Plaintiffs filed this action against more than sixty defendants, claiming that their investments in four limited partnerships were fraudulently induced. Plaintiffs have alleged violations of § 10(b) of the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and state law in connection with the issuance of private placement memoranda (the "Memoranda") used in the sale of the partnership interests. Defendants Price Waterhouse, an accounting firm, and Howard Jackson Associates, Inc. ("Howard Jackson"), a professional appraiser, have filed motions to dismiss the complaint against them pursuant to Fed.R.Civ.P. 9(b), 12(b)(6), and based on the relevant statutes of limitations.[1]

## BACKGROUND

Plaintiffs invested in four limited partnerships involved in the acquisition and operation of shopping malls. The partnerships were similarly structured, and sought to achieve tax and other benefits for the investors. Briefly stated, an affiliate of one of the limited partnership sponsors would purchase a shopping mall for a small cash downpayment and a note, and then sell it at a slightly higher price to one of several defendant pension plans. The limited partnership sponsors would then solicit investment from the public through the Memoranda, and purchase the shopping mall from the pension plan at a still higher

price. This third successive purchase was funded by a wraparound mortgage issued at an above-market rate of interest, which provided for increasingly high payments during the early years of the partnerships. In many of the transactions, the partnership would enter into a Master Lease agreement with one of the defendant sponsors or an affiliate. Under the Master Lease, the partnership would be paid a fixed amount by the lessee, alleged by plaintiffs to be below the estimated actual rents. *See generally* Third Amended Class Action Complaint, ¶ 21.[2]

Plaintiffs allege that Price Waterhouse, an accounting firm not officially affiliated with any other defendant, "assisted in the preparation of the Memoranda and reviewed all of the Memoranda, including the financial forecasts in the Memoranda, and beginning in or about 1982, opined on the reasonableness of every such forecast." Third Complaint, ¶ 24. More specifically, plaintiffs allege that Price Waterhouse falsely represented that it had undertaken procedures to test the reasonableness of certain economic assumptions provided by the partnership sponsors and relied on by Price Waterhouse in making the financial projections. Third Complaint, ¶ 29. Plaintiffs also claim that Price Waterhouse, as auditor of the partnerships, was aware of the impending financial difficulties of the partnerships, yet continued to opine on the reasonableness of the financial projections in subsequent partnership offerings. Third Complaint, ¶ 30. Plaintiffs claim that Price Waterhouse's expertise in tax and financial matters creates a strong inference that these alleged misrepresentations and omissions were intentionally or recklessly made. Third Complaint, ¶¶ 31–32.

1. The claims of the plaintiff class against all defendants aside from Price Waterhouse and Howard Jackson were terminated by a class action settlement agreement executed on July 27, 1989. Defendants Price Waterhouse and Howard Jackson were not parties to the settlement agreement, and the plaintiff class has continued to prosecute its claims against them.

2. Although the most current pleading is denoted the Third Amended Class Action Complaint, plaintiffs have only amended their pleading once with regard to Price Waterhouse and Howard Jackson. *See* Plaintiffs' Memorandum of

Law, at 2 n. 1. As will be discussed *infra,* the Court dismissed the initial pleading against Price Waterhouse and Howard Jackson—the Second Amended Class Action Complaint—on August 10, 1989. *See O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222 (S.D.N.Y. 1989). The Third Amended Class Action Complaint is referred to herein as "the pending complaint" or "the Third Complaint." The previously dismissed Second Amended Class Action Complaint is referred to as "the Second Complaint."

Plaintiffs allege that Howard Jackson participated in the fraudulent scheme by "repeatedly provid[ing] written appraisals which stated that the fair market value of the properties was approximately equal to or exceeded the artificial price paid by the ... partnerships for the properties." Third Complaint, ¶ 33. As with the claims against Price Waterhouse, the complaint alleges that Howard Jackson misrepresented that it had investigated and analyzed economic data provided by the partnership sponsors which was used as a basis for the appraisals. Third Complaint, ¶ 34. Finally, plaintiffs claim that Howard Jackson, as a professional appraiser, was aware that the "same day stepped-up multiple price transactions" used by the partnership sponsors were "unique to abusive tax shelters," and could not provide a competitive equity return to investors. Third Complaint, ¶¶ 35–36.

On August 10, 1989, this Court granted previous motions filed by Price Waterhouse and Howard Jackson to dismiss the Second Complaint against them pursuant to Fed.R. Civ.P. 9(b). *See O'Brien v. National Property Analysts*, 719 F.Supp. 222 (S.D. N.Y.1989) *("O'Brien")*. The Court ruled that plaintiffs had lumped the roles of the various defendants, had failed to allege scienter sufficiently, and had not shown how the alleged misrepresentations and omissions by Price Waterhouse and Howard Jackson were misleading given the cautionary language included in the Memoranda. *Id.* at 227–29. The reasoning of the 1989 Opinion, and a comparison of the two complaints against Price Waterhouse and Howard Jackson, will be discussed with regard to the specific points mentioned below. The dismissal was ordered without prejudice, and plaintiffs filed the Third Complaint on October 30, 1989.

## DISCUSSION

### A. Standard Under Fed.R.Civ.P. 9(b)

■ Although the Court set out in detail the Rule 9(b) standard in its previous opinion, *see O'Brien, supra*, 719 F.Supp. at 225–26, the following discussion will serve to highlight the aspects of the law which bear most strongly on the pending motion. Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

As in a motion to dismiss the complaint pursuant to Rule 12(b)(6), the plaintiff's allegations must be taken as true in a motion under Rule 9(b). *See, e.g., Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986).

The complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide the defendant fair notice of the plaintiff's claims, and to enable the defendant to prepare a suitable defense, protect his reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987); *Spier v. Erber*, No. 89 Civ. 1657 (PKL), slip op. at 11, 1990 WL 71502 (S.D.N.Y. May 24, 1990).

As previously noted, courts have required complaints brought under the federal securities laws to identify the allegedly fraudulent statements, and the time, place, and content of those statements to survive a motion pursuant to Rule 9(b). *See O'Brien, supra*, 719 F.Supp. at 225 (citations omitted). The Second Circuit has held that "reference to an offering memorandum satisfies 9(b)'s requirement of identifying time, place, speaker, and content of representation where ... defendants are insiders or affiliates participating in the offering of securities." *Quaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990).

■ Under Rule 9(b), knowledge and other conditions of mind may be averred generally. However, the plaintiff must specifically allege the events which give rise to a strong inference that the defen-

dant had knowledge of the misrepresentations or omissions. *Ross v. A.H. Robins, Co., supra,* 607 F.2d at 558. "Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.,* 902 F.2d 169, 172, (2d Cir.1990) (to be cited at 902 F.2d 169) (*quoting Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987)). "A common method of establishing a strong inference of scienter is to allege facts showing a motive for committing fraud and a clear opportunity for doing so." *Beck v. Manufacturers Hanover, supra,* 820 F.2d at 50 (*citing Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985)).

■ It is important in the context of lawsuits brought against accountants and other financial advisors that fraudulent intent, or recklessness rising to the level of conscious behavior, is required to underpin a claim brought under § 10(b) of the Securities Exchange Act of 1934, or the mail and wire fraud statutes as predicate acts of a RICO offense. Allegations of negligence are insufficient in this regard. *Eickhorst v. American Completion and Development,* 706 F.Supp. 1087, 1092 n. 3 (S.D.N.Y.1989) (*citing Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1975); *Beck v. Manufacturers Hanover Trust Co., supra,* 820 F.2d at 49–50). Even if the defendant accounting firm should have made further inquiries to attempt to uncover the alleged fraud, " 'failure [to make further inquiries does] not rise above the level of negligence, which is legally insufficient,' " unless facts are alleged which tend to establish the accountant's knowledge of the fraud. *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 394 (S.D.N.Y.1988) (*quoting Oleck v. Fisher,* [1979] Fed.Sec.L.Rep. (CCH) ¶ 96,898 at 95,698, 1979 WL 1217 (S.D.N.Y.1979), *aff'd,* 623 F.2d 791 (2d Cir.1980)).

■ The fact that an accounting firm may have conducted an audit of an alleged primary securities law violator, and then issued favorable opinion letters or projections, is insufficient to establish scienter.

*Friedman v. Arizona World Nurseries Limited Partnership,* 730 F.Supp. 521, [Current] Fed.Sec.L.Rep. (CCH) ¶ 94,902 at 94,976 (S.D.N.Y.1990); *The Limited, Inc., supra,* 683 F.Supp. at 394; *Ross v. Warner,* 480 F.Supp. 268, 272 (S.D.N.Y.1979). "Plaintiffs must allege circumstances giving rise to an inference of a breach of generally accepting auditing standards amounting to a 'fraudulent breach of duty.' " *Ross v. Warner, supra,* 480 F.Supp. at 272 (*quoting Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 523 (S.D.N.Y.1977)). The complaint must allege facts establishing that an accountant defendant had become aware of the economic viability of the underlying business at the time the allegedly fraudulent statements, opinions, or reports were made or issued. *See Friedman v. Arizona World Nurseries, supra,* 730 F.Supp. 521, [Current] Fed.Sec.L.Rep. (CCH) at ¶ 94,975–76; *Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 769 (S.D.N.Y.1981), *aff'd,* 697 F.2d 296 (2d Cir.1982).

An accusation of intentional fraud, or reckless conduct constituting fraud, is a serious charge and can cause substantial harm to the reputation of a professional organization. As the Court emphasized in its prior opinion, one of the purposes of Rule 9(b) is to allow professional organizations to protect their reputation, which is, arguably, their most valuable economic asset. *See O'Brien,* 719 F.Supp. at 225 (*citing DiVittorio, supra,* 822 F.2d at 1247); *see also Shumate v. McNiff,* [Current] Fed. Sec.L.Rep. (CCH) ¶ 94,897 at 94,912, 1990 WL 6549 (S.D.N.Y. January 22, 1990) (*citing Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1090 (S.D.N.Y. 1977)). With these considerations in mind, the Court will consider the motions of Price Waterhouse and Howard Jackson.

### B. Price Waterhouse's Rule 9(b) Motion

■ Although plaintiffs have elaborated on the alleged fraudulent conduct of Price Waterhouse in the Third Complaint, their core allegations remain similar to those previously dismissed by the Court. As the

few substantive additions to plaintiffs' allegations do not cure their fundamental lack of particularity, the Court must dismiss plaintiffs' federal securities laws claim against Price Waterhouse pursuant to Rule 9(b).

The most evident infirmity of the pending complaint is the failure by plaintiffs to allege fraudulent scienter on the part of Price Waterhouse. It is axiomatic that plaintiffs allege facts which create a strong inference of scienter to underpin their claims pursuant to § 10(b). *Wexner v. First Manhattan Co., supra,* 902 F.2d 169; *Royal American Managers, Inc. v. IRC Holding Corp.,* 885 F.2d 1011, 1015 (2d Cir.1989). The facts which plaintiffs have alleged in the pending complaint to suggest scienter—that Price Waterhouse had audited certain of the partnerships, that Price Waterhouse was an expert in tax and other financial matters, and that the projections and assumptions were arbitrary and unreasonable on face—are insufficient to create the strong inference required by the Second Circuit.

As discussed above and in the prior opinion of the Court, the mere fact that an accounting firm acted as auditor and financial forecaster to an allegedly fraudulent investment scheme does not on its own create an inference of scienter. *See O'Brien, supra,* 719 F.Supp. at 228; *The Limited, Inc., supra,* 683 F.Supp. at 394. Plaintiffs' conclusion that the "audited financials reflected the actual rents collected on the properties, which, when compared to the projections and anticipated needs under the Master Leases, both of which were known to Price Waterhouse, indicated the true underlying activity and impending financial difficulties of the partnerships" is inadequate to create a strong inference of fraudulent scienter. *See* Third Complaint, ¶ 30. When viewed in light of the transactions and the Memoranda, these allegations are entirely too vague and unspecific to withstand a motion pursuant to Rule 9(b).

First, plaintiffs' allegation that "Price Waterhouse ... acted as accountants for the sponsor entities and all the limited partnerships until at least 1986, and prepared annual audited financial statements for both groups of entities" obscures the fact that no audits had taken place of the four limited partnerships at issue in this lawsuit. *See* Third Complaint, ¶ 30. No audits had taken place of these partnerships when Price Waterhouse made its financial projections, because they were not yet in existence and had no financial history. "Allegations of fraud relating to speculative projections 'must allege particular facts demonstrating the knowledge of defendants *at the time* that such statements were false.'" *O'Brien, supra,* 719 F.Supp. at 228 (*quoting DiVittorio, supra,* 822 F.2d at 1248) (emphasis added by this Court in *O'Brien*). Plaintiffs' allegation that Price Waterhouse's audits of the other limited partnerships and the sponsors should have disclosed that the four partnerships in question faced "imminent difficulties" is farfetched. Such a factual allegation does not come near to creating a strong inference of fraudulent intent or scienter on the part of Price Waterhouse.

Second, the full disclosure in the Memoranda of the actual rents collected on the underlying properties suggests that Price Waterhouse acted without any intent to defraud the investors. The Memoranda set out the annual rents of all the existing tenants of the partnership properties, the duration of the existing leases, and some of the basic terms which would have an effect on the future collection of rents. Price Waterhouse argues, and the Court agrees, that plaintiffs have not alleged exactly what Price Waterhouse learned through the auditing process that was not disclosed in the Memoranda, and which creates an inference of fraudulent scienter.

Similarly, the alleged failure of Price Waterhouse to investigate the factual representations made to it by other defendants—the so-called "assumptions"—does not create a strong inference of scienter, and at best states a claim for negligence. The Second Complaint previously dismissed by the Court stated this allegation in a single sentence. *See* Second Complaint, ¶ 39. The pending complaint sets out essentially the same allegation in a page-long paragraph, stating that the assumptions

were unrelated to real economic factors, that Price Waterhouse had misrepresented to the public that it had procedures to review and confirm the assumptions, and that Price Waterhouse acted recklessly by failing to investigate the assumptions while opining on the reasonableness of the financial projections. Third Complaint, ¶ 29. The current expanded version of this pleading adds no new factual allegations to the old version, and is similarly defective in its failure to allege scienter. *See O'Brien, supra,* 719 F.Supp. at 226 n. 7; *see also Friedman v. Arizona World Nurseries, supra,* 730 F.Supp. 521, [Current] Fed.Sec. L.Rep. (CCH) at 94,975 ("[T]he allegations of the [accountant] defendants' state of mind are merely conclusory and ... there are no factual allegations which indicate that they knew of the alleged 'unreasonableness' of the assumptions, the 'falsity' of the appraisal, and the 'fact' that the ... business was failing.").

■ Finally, plaintiffs' allegations that certain individuals at Price Waterhouse were tax experts, and that they had worked on other limited partnerships which led to securities fraud complaints, are insufficient to create a strong inference of scienter. *See* Third Complaint, ¶¶ 31–32. Conclusory allegations of an accountant defendant's skill or experience does not satisfy the particularity requirements of Rule 9(b), unless it is specifically shown how or why the expert should have believed the projections to be inaccurate. *Friedman v. Arizona World Nurseries, supra,* 730 F.Supp. 521, [Current] Fed.Sec.L.Rep. (CCH) at 94,976; *see also Dannenberg v. Dorison,* 603 F.Supp. 1238, 1241 (S.D.N.Y. 1985) (outsiders' participation in 50 allegedly fraudulent tax shelters does not permit inference of knowledge of fraud). Regardless of the supposed skill of the individuals at Price Waterhouse, the complaint does not sufficiently establish that they knew of the alleged fraud and participated in it.

Viewing the Third Complaint as a whole, the Court finds that plaintiffs have not stated a cause of action for securities fraud pursuant to § 10(b) with sufficient particularity. Although plaintiffs have significantly increased the verbiage of their allegations, there is little more of substance than in the Second Complaint. Plaintiffs' core allegation can be summed up in a single sentence—Price Waterhouse, an expert in financial forecasting, knew of the impending economic troubles of the partnerships due to its role as auditor, yet continued to opine favorably on the future of the partnerships. This factual scenario could be alleged with regard to a multitude of securities offerings gone astray for any number of reasons. More indications of an intentional and purposeful fraudulent scheme involving the accountant are needed for a complaint to withstand a motion pursuant to Rule 9(b).

### C. Howard Jackson's Rule 9(b) Motion

■ Although the role of Howard Jackson in the limited partnership scheme is distinct from that of Price Waterhouse, the legal issues involved in Howard Jackson's Rule 9(b) motion are similar. As with the pleadings against Price Waterhouse, the Third Complaint against Howard Jackson adds little of substance to the Second Complaint, and thus does not satisfy the particularity requirements of Rule 9(b).

Plaintiffs have failed to allege scienter with sufficient particularity with regard to Howard Jackson's conduct in the limited partnership scheme. As in the Second Complaint, the Third Complaint alleges that Howard Jackson acted recklessly in not carrying out an independent investigation of the data provided it by the other defendants. Second Complaint, ¶ 43; Third Complaint, ¶ 34. In addition, the pending complaint alleges that Howard Jackson knew that its appraisals were unreasonably inflated, given the nature of the stepped-up price transactions, and that such arrangements were "unique to abusive tax shelters." Third Complaint, ¶¶ 35–36. Neither the elaboration of the previously made allegations, nor the inclusion of the new allegations, creates the strong inference of scienter necessary to underpin claims brought under § 10(b). *See Wexner v. First Manhattan Corp., supra,* 902 F.2d 169; *Eick-*

*horst v. American Completion and Development, supra,* 706 F.Supp. at 1092 n. 3.

■ Howard Jackson's alleged failure to investigate the economic data on which appraisals of the subject properties were based does not rise above the level of negligence, and thus fails the pleading requirements of § 10(b). *See Friedman v. Arizona World Nurseries, supra,* 730 F.Supp. 521, [Current] Fed.Sec.L.Rep. (CCH) at 94,-976 (*citing O'Brien, supra,* 719 F.Supp. at 229); *The Limited, Inc. v. McCrory Corp., supra,* 683 F.Supp. at 394. The conclusory assertion that Howard Jackson's failure to investigate the representations of the other defendants was "in contravention of the standards and codes of its industry" does not establish that Howard Jackson knowingly or recklessly participated in a fraud on plaintiffs. *See* Third Complaint, ¶ 34. Neither the industry standards, nor the extent of Howard Jackson's alleged deviation from the standards, is discussed in detail.

Howard Jackson's appraisals with regard to the stepped-up price transactions do not create a strong inference of fraudulent scienter. The complaint alleges that an inference of fraud is created by the fact that "these artificially inflated prices were less than the properties' fair market value by a similar percentage in every case." Third Complaint, ¶ 34; *see also id.,* ¶ 35. However, upon viewing the Memoranda as a whole, the presentation of Howard Jackson's appraisals and opinions do not suggest intentional fraud or reckless conduct. The Memoranda disclose the stepped-up price transactions in substantial detail, states that they were not arms-length transactions, and that the Internal Revenue Service may well consider the values as being overstated. "In short, plaintiffs' 'own source repels [their] claims.' " *O'Brien, supra,* 719 F.Supp. at 228 (*quot-*

*ing Crystal v. Foy,* 562 F.Supp. 422, 427 (S.D.N.Y.1983)).

Finally, plaintiffs claim that Howard Jackson's opinions relating to the wraparound mortgage and Master Lease arrangements were fraudulently given, in that Howard Jackson knew such devices were associated with abusive tax shelters, and had no basis or expertise to opine that such arrangements would provide investors with "competitive equity returns." Third Complaint, ¶ 36. Plaintiffs' allegations that wraparound mortgages and Master Leases are telltale signs of an abusive and illegal tax shelter, and that Howard Jackson was on notice of these facts, is pled in a conclusory fashion, without any attempts at substantiation. Howard Jackson's opinion that a fair return on equity would be achieved, and the failure of the investors to achieve such returns, are insufficient bases to underpin a claim for knowing or reckless fraud.[3]

### D. Plaintiffs' RICO Allegations

■ Plaintiffs have alleged as predicate acts of their RICO claim that Price Waterhouse and Howard Jackson violated § 10(b) of the Securities Exchange Act of 1934, the mail fraud statute, 18 U.S.C. § 1341, and the wire fraud statute, 18 U.S.C. § 1343. Third Complaint, ¶ 66. "To allege properly the existence of a pattern of racketeering activity, a complaint must, at the very least, include allegations that the defendant has committed ... 'predicate acts.' " *Sendar Co. v. Megaware Inc.,* 705 F.Supp. 159, 162 (S.D.N.Y.1989). Plaintiffs' RICO allegations must fail as a matter of law, as none of the predicate acts have been pled in the complaint with requisite particularity.

This Court has clearly held that "predicate actions resting on fraud [must] be pled with particularity" under Rule 9(b). *Landy v. Mitchell Petroleum Technology Corp.,* 734 F.Supp. 608, 622 (S.D.N.Y.1990)

---

**3.** Plaintiffs do not appear to have repled their allegations that Price Waterhouse and Howard Jackson aided and abetted the alleged fraudulent conduct of the other defendants. In any case, the particularity requirements of Rule 9(b) apply to allegations of aiding and abetting fraud. *O'Brien, supra,* 719 F.Supp. at 229 n. 10

(*citing Andreo v. Friedlander, Gaines, Cohen,* 651 F.Supp. 877, 880 (D.Conn.1986)). Thus, plaintiffs' allegations that Price Waterhouse and Howard Jackson aided and abetted the other defendants in perpetrating a fraud would be similarly dismissed pursuant to Rule 9(b).

(citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26 n. 4 (2d Cir. 1990)). " '[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions....' " O'Brien, supra, 719 F.Supp. at 230 (quoting Plount v. American Home Assurance Co., 668 F.Supp. 204, 206 (S.D.N.Y.1987)). As the Court has found that plaintiffs' claims under § 10(b) should be dismissed, the only remaining consideration is whether plaintiffs' mail and wire fraud allegations have been pled with the requisite particularity.

As with § 10(b), both the mail and wire fraud statutes require a showing of an intent to defraud, or reckless conduct rising to the level of intentional behavior. See O'Malley v. NYC Transit Authority, 896 F.2d 704, 706–07 (2d Cir.1990); Beck v. Manufacturers Hanover, supra, 820 F.2d at 49–50. Thus, plaintiffs must adequately allege the fraudulent scienter of Price Waterhouse and Howard Jackson. As the Court has indicated in the discussion above, plaintiffs have not alleged facts which give rise to a strong inference that either Price Waterhouse or Howard Jackson acted with fraudulent scienter in their activities related to the limited partnerships. Plaintiffs' mail and wire fraud claims, and therefore their RICO claim, must fail as a matter of law.

### E. Plaintiffs' State Law Claims

The Court's only basis of jurisdiction over plaintiffs' state law claims is through pendent jurisdiction. As all of plaintiffs' federal claims have been dismissed, the Court no longer has jurisdiction over plaintiffs' state law claims. See Finley v. United States, — U.S. —, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989); United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiffs' state law claims are hereby dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

### F. Dismissal of Plaintiffs' Claims With Prejudice

Federal Rule of Civil Procedure 15(a) requires that "leave [to amend the complaint] shall be freely given when justice so requires." The Court recognizes that the Second Circuit has interpreted Rule 15(a) liberally, allowing for amendment unless circumstances exist such as " 'undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party.' " Richardson Greenshields Securities, Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981)); see also Luce v. Edelstein, supra, 802 F.2d at 56 ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."). If the district court does exercise its discretion to dismiss the complaint with prejudice, "refusal to grant leave must be based on a valid ground." Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir.1990) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

In the case at bar, the Court believes that dismissal of plaintiffs' federal law claims against Price Waterhouse and Howard Jackson should be with prejudice. Plaintiffs have already been granted one opportunity to amend their pleadings, and they have failed to do so in a satisfactory fashion under Rule 9(b). More importantly, the nature of plaintiffs' amendments— mere elaboration and increased verbiage concerning the same core allegations initially put forward—suggests to the Court that a third pleading against Price Waterhouse and Howard Jackson would merely duplicate these efforts. The Court therefore declines to allow plaintiffs to file a third pleading in this case, based on the expected futility of such a pleading and the costs and potential prejudice which would be caused to defendants. See Posner v. Coopers & Lybrand, supra, 92 F.R.D. at 770 (dismissal with prejudice of the amended complaint proper when the Court put the plaintiff on notice of the deficiencies of the initial complaint, and the plaintiff failed to correct them in the amended pleading).

### CONCLUSION

Defendants Price Waterhouse and Howard Jackson's motions to dismiss pursu-

ant to Fed.R.Civ.P. 9(b) are granted. Plaintiffs' claims brought pursuant to § 10(b) of the Securities Exchange Act of 1934, and RICO, 18 U.S.C. § 1961 *et seq.*, are dismissed with prejudice. Plaintiffs' state law claims are dismissed for lack of subject matter jurisdiction pursuant to Fed.R. Civ.P. 12(b)(1). Defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11 is denied.

SO ORDERED