Veronica ZUCKER, on Behalf of Herself and All Others Similarly Situated, Plaintiff,

v.

Chikara SASAKI, Bernard M. Manuel, Irving Benson, Colin C. Fenn, Trevor J. Wright, Roy E. Green, Gary C. Smith, Susan P. Johnson, Paul D. Baiocchi, James G. Groninger, Paul Jacobs, Stuart B. Katz, Cygne Designs, Inc. PaineWebber Inc., PaineWebber International (U.K.) Ltd., Furman Selz Inc., Smith Barney Inc., David Frankel, Barry Rothberg, Faye Landes and Ernst & Young, L.L.P., Defendants.

No. 95 Civ. 10517 (SWK).

United States District Court, S.D. New York.

May 6, 1997.

Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P. by Keith M. Fleischman, New York City, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P. by William S. Lerach, San Diego, CA, Stull, Stull & Brody by Jules Brody, New York City, Weiss & Yourman by Joseph H. Weiss, New York City, Savett, Frutkin, Podell & Ryan by Stuart H. Savett, Philadelphia, PA, for Plaintiffs.

Mayer, Brown & Platt by Marc Gary, John J. Sullivan, Gary A. Orseck, Washington, DC, for Ernst & Young.

Wilmer, Cutler & Pickering by Charles E. Davidow, Joseph K. Brenner, Melinda Hardy, Jonathan E. Meyer, Washington, DC, for PaineWebber Inc., PaineWebber International (U.K.) Ltd., Furman Selz Inc., Smith Barney Inc., David Frankel, Barry Rothberg, and Faye Landes.

Wilson, Sonsini, Goodrich & Rosati Professional Corporation by Boris Feldman, Palo Alto, CA, Herrick, Feinstein, PC by Christopher J. Sullivan, New York City, for Cygne Designs, Inc., Chikara Sasaki, Bernard M. Manuel, Irving Benson, Colin C. Fenn, Trevor J. Wright, Roy E. Green, Gary C. Smith, Susan P. Johnson, Paul D. Baiocchi, James G. Groninger, Paul Jacobs, Stuart B. Katz.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

In this class action asserting securities fraud, defendant Ernst & Young, L.L.P. ("Ernst & Young") moves to dismiss the amended complaint of plaintiff Veronica Zucker ("Zucker"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). For the reasons set forth below, Ernst & Young's motion is granted.[1]

## BACKGROUND[2]

### I. The Fraudulent Scheme

Cygne Designs, Inc. ("Cygne") designs and manufactures clothing for retailers. Amended Complaint ("Compl.") ¶ 2. On September 28, 1993, Cygne announced its acquisition of Fenn, Wright & Mason ("FWM"), another manufacturer, for 2,000,000 shares of Cygne stock. Compl. ¶ 60. In various public statements and documents, Cygne represented that the acquisition of FWM would increase its earnings and profitability. The acquisition closed on April 6, 1994, and the amount of goodwill was ultimately adjusted to approximately $47 million.

Despite Cygne's favorable representations regarding the FWM acquisition, Zucker

---

1. Zucker's claims against the other defendants in this action—PaineWebber Inc., PaineWebber International (U.K.) Ltd., Furman Selz Inc., Smith Barney Inc., David Frankel, Barry Rothberg, Faye Landes, and Cygne Designs, Inc. and its officers and directors, Bernard M. Manuel, Irving Benson, Colin C. Fenn, Trevor J. Wright, Roy E. Green, Gary C. Smith, Susan P. Johnson, Paul D. Baiocchi, James G. Groninger, Paul Jacobs, Stuart B. Katz and Chikara Sasaki have been dismissed pursuant to a Stipulation and Agreement of Settlement dated April 14, 1997.

2. The facts described below are those alleged in the amended complaint, which for purposes of this motion to dismiss are taken as true. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

claims that in fact, all the defendants had learned during the pre-purchase investigation that FWM was experiencing problems such that there was no reasonable basis to believe that the purchase price or recorded goodwill could be recovered. Compl. ¶¶ 12, 82, 99(a)(c). Zucker claims that by early 1994, defendants knew that Cygne's business was in trouble due to quality control operations, failure to obtain new and creditworthy customers, and management problems. Compl. ¶ 99.

In June 1994, Cygne undertook a secondary stock offering of $73.4 million (the "Secondary Offering"), in which it sold 2,300,000 shares. Zucker alleges that as a result of the Secondary Offering, certain insiders and controlling shareholders of Cygne sold 1,725,-000 shares at $18¼ per share. Compl. ¶¶ 4, 74. Moreover, according to Zucker, Cygne falsely reported that the proceeds of the Secondary Offering, together with Cygne's internally generated cash flow, would provide Cygne with sufficient resources and liquidity to operate its business and pursue its expansion plans. Compl. ¶¶ 81, 83, 94.

During this period, Zucker claims that defendants also represented to the investing public that Cygne would achieve strong earnings growth in 1994 and 1995. Compl. ¶¶ 73, 75, 80, 90, 92. Likewise, Zucker asserts that Cygne made numerous false representations regarding the ability and success of its business, internal organization, merchandizing and relationships with new customers. Compl. ¶¶ 65, 67, 73, 78, 91–93.

On August 4, 1994, Cygne announced an agreement to acquire another manufacturer, GJM International Ltd. ("GJM"), for $1.3 million and 650,000 shares of Cygne stock. As with its acquisition of FWM, Cygne represented to the investing public that GJM would be a strong addition to the company. Compl. ¶¶ 86, 92, 95. Cygne recorded approximately $27.7 million of goodwill in connection with this acquisition. Compl. ¶ 6.

On October 24, 1994, Cygne revealed that due to poor retail sales and product returns, its third quarter 1994 earnings would be much lower than originally forecast. Compl. ¶ 96. After this announcement, Cygne stock fell from $20 per share to $12½ per share.

Zucker alleges, however, that the stock continued to trade at artificially high prices due to various misrepresentations by Cygne, including that the third quarter decline was a one-time occurrence which had been corrected, Compl. ¶ 97, that the FWM acquisition was successful, Compl. ¶ 97, 114, that the GJM acquisition would improve Cygne's earnings, Compl. ¶ 105, 106, that Cygne would achieve earnings growth in 1994 and 1995 due to new customers, Compl. ¶¶ 105, 107, 109–11, and that Cygne had sufficient financial resources and liquidity to operate its business and pursue its expansion plans, Compl. ¶¶ 100, 103, 108.

On April 28, 1995, Cygne filed its annual report with the Securities and Exchange Commission ("SEC"). At the same time, Cygne issued a public statement indicating that it would suffer a substantial loss in the first quarter of 1995 due to various factors, including poor performance of FWM's Hong Kong product sourcing operation, weak sales, quality control problems, and a $1.1 million write-off of uncollectible accounts receivable from a new customer. As a result of this announcement, Cygne stock fell to $6¼ per share. Compl. ¶ 119.

On September 11, 1995, Cygne announced an even larger loss for the second quarter of 1995 of approximately $5.1 million. Compl. ¶ 129. Thereafter, on November 21, 1995, Cygne revealed a third quarter loss of over $43 million—almost $3.50 per share. This loss was attributable, in significant part, to the write-off of almost all of the goodwill recorded one year earlier in connection with Cygne's acquisition of FWM. Cygne also revealed other significant problems, such as extreme liquidity shortages and discontinued customers. Compl. ¶ 131.

Given the aforementioned circumstances, Zucker alleges that from September 28, 1993 through April 28, 1995 (the "Class Period"), Cygne's financial statements were fraudulently manipulated to artificially inflate revenues and earnings. Zucker further asserts that the defendants knew or recklessly disregarded facts relating to this alleged fraud. Specifically, Zucker claims that despite their assurances that the FWM acquisition would

increase Cygne's earnings, defendants knew that the acquisition would, in fact, adversely affect Cygne's earnings. In addition, Zucker alleges that defendants knew that Cygne's business was in trouble and that Cygne had been engaging in numerous business activities that threatened the success of the company, but continued to make public statements to the contrary. Finally, Zucker claims that throughout the Class Period, Cygne utilized the help of a variety of professionals—including its independent accounting firm, Ernst & Young—to ensure the success of its scheme to defraud the public.

## II. Allegations Against Ernst & Young

Zucker's Section 10(b) and Rule 10b–5 claims against Ernst & Young are based solely on Cygne's financial statements for the fiscal years ending January 29, 1994 ("Fiscal 1993") and January 28, 1995 ("Fiscal 1994"). Zucker contends that Ernst & Young fraudulently issued "clean" audit opinions of these statements despite knowledge of facts that revealed the falsity of these statements.

Zucker asserts that in order to overstate revenues, earnings, and stockholders equity, Cygne engaged in numerous accounting practices in violation of Generally Accepted Accounting Principles ("GAAP"). Such practices, according to Zucker, included improperly reporting the value of Cygne's investments in FWM and GJM, improperly recognizing revenues and goodwill, failing to timely write down accounts receivable of doubtful collectibility, and improperly reporting a gain on the disposition of part of FWM's assets in the first quarter of 1995. In particular, Zucker asserts that Ernst & Young knowingly disclosed false information relating to the FWM acquisition in footnote 14 of its audit report for Fiscal 1993. Footnote 14 of the report, labeled "Subsequent Event," states that "On April 6, 1994, Cygne [purchased] FWM, and FWM became a wholly-owned subsidiary of Cygne. The excess of the purchase price over the fair value

of the net assets acquired of approximately $46,500,000 has been recorded as goodwill and will be amortized over a twenty-five year period." Report for Fiscal 1993, annexed to the Affidavit of Sarah A. Good, sworn to on April 8, 1996, as Exh. "5," at F–20.

According to Zucker, at the time that Ernst & Young issued the above statement, it knew or had reason to know that the FWM acquisition would fail. Similarly, Zucker asserts that when Ernst & Young issued "clean" opinions on Cygne's statements for Fiscal 1993 and Fiscal 1994, Ernst & Young knew or recklessly disregarded the above-stated "true facts" about Cygne. Plaintiff attributes Ernst & Young's knowledge or reckless disregard of these "true facts" to Ernst & Young's presence at Cygne's headquarters and its access to Cygne's confidential records.

According to Zucker, when Ernst & Young certified Cygne's statements for Fiscal 1993 and Fiscal 1994 and stated that its examinations were made in accordance with Generally Accepted Auditing Standards ("GAAS"), Ernst & Young committed fraud against the public. Zucker claims that Ernst & Young's audits were contrary to GAAS due to Ernst & Young's failure to take various professional measures to ensure that its audits were accurate.[3]

## DISCUSSION

## I. Standard of Law

On a motion to dismiss brought pursuant to Rule 12(b)(6), the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his

**3.** For example, Zucker claims that, inter alia, Ernst & Young failed to exercise due professional care, failed to obtain a sufficient understanding of the internal control structure at Cygne, failed to obtain sufficient material through inspection, observation or inquiries, falsely stated that the

financial statements complied with GAAP, failed to plan and perform with an attitude of professional skepticism, and failed to maintain independence in all matters related to an assignment. Compl. ¶ 158.

claim which would entitle him to relief." *Still v. DeBuono,* 101 F.3d 888, 891 (2d Cir. 1996) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

Zucker's claims against Ernst & Young are based on alleged violations of Section 10(b) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission Rule 10b–5. Section 10(b) makes it

> unlawful for any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, a general anti-fraud provision promulgated under Section 10(b), makes it unlawful to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading...." 17 C.F.R. 240.10b–5(2).

To state a cause of action under Rule 10b–5, a plaintiff must plead that "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that plaintiff's reliance on defendant's; action caused him injury." *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir. 1985). To establish scienter pursuant to Section 10(b) and Rule 10b–5, a plaintiff must demonstrate either that (1) defendants had knowledge of the falsity of the misstatement or omission at issue, or (2) defendants had a "willful, deliberate, or reckless disregard for the truth that is the equivalent of knowledge." *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1305 (2d Cir.1973).

## II. Motion to Dismiss Pursuant to Rule 12(b)(6)

### A. The Fiscal 1993 Report

■ Ernst & Young's audit report for Fiscal 1993 (the "Fiscal 1993 Report"), which was issued on April 8, 1994, included a footnote that reported a subsequent event—the acquisition of FWM. Paragraph 70 of the amended complaint describes this footnote:

> Cygne's financial statements, at footnote 14, reported the acquisition of FWM as a subsequent event, and in addition, reported that approximately $46.5 million of goodwill had been reported in connection with the acquisition of FWM and that such goodwill would be amortized over a twenty-five year period. The amount of the recorded goodwill was subsequently adjusted to in excess of $47 million.

Compl. ¶ 70. That the event was labeled "subsequent" indicates that it was not part of Ernst & Young's audit of the Fiscal 1993 statement.[4] Zucker claims, however, that Ernst & Young violated Section 10(b) and Rule 10b–5 by making this disclosure despite its knowledge or reckless disregard of the fact that the goodwill was materially overstated and that the acquisition would likely be unprofitable.

The statements in footnote 14 cannot form the basis for a securities fraud claim because Zucker concedes that the footnote accurately describes the manner in which the goodwill from the FWM acquisition was recorded in Cygne's books. *See* Pl.'s Mem. of Law, dated May 24, 1996, at 34 ("the treatment of how Cygne was accounting for the FWM ... goodwill was disclosed in its public documents"). This concession undermines Zucker's contention that footnote 14 forms the basis for a securities fraud claim against Ernst & Young. *See Kramer v. Time Warner Inc.,* 937 F.2d 767, 778 (2d Cir.1991) (where there is accurate disclosure, there is "no hint of any intent to deceive").

Unable to dispute the truthfulness of footnote 14, Zucker takes issue with the judgments made by Cygne and reported by Ernst & Young regarding the length of the amortization period and the amount of goodwill booked. Zucker argues that because Cygne wrote off almost all of the goodwill associated with the FWM acquisition on November 21, 1995, Cygne and Ernst & Young should have known that the FWM acquisition

---

4. The acquisition closed on August 6, 1994, two days before the Fiscal 1993 Report was issued.

would fail when it was consummated eighteen months earlier. This argument is nothing more than an example of "fraud by hindsight." *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir.1978); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d at 53 ("[d]efendants' lack of clairvoyance simply does not constitute securities fraud").

Zucker offers no factual support for the assertion that Ernst & Young knew or should have known that there was no reasonable basis for the recorded goodwill and amortization period. Rather, the amended complaint simply asserts that as Cygne's auditors, with access to Cygne's internal documents, Ernst & Young knew or was reckless in not knowing that the FWM goodwill was materially overstated. This conclusory and fact-deficient allegation is insufficient to allege securities fraud. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir.1996) (since plaintiffs have not alleged circumstances indicating that the statements at issue were false, plaintiffs have failed to adequately plead fraud); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) (plaintiff must allege facts implying defendants' intent to deceive in order to state securities fraud claims); *O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 281 (S.D.N.Y. 1990) (vague and unspecified allegations against auditor do not plead scienter), *aff'd*, 936 F.2d 674 (2d Cir.1991). Accordingly, allegations based on the Fiscal 1993 Report fail to state a claim for securities fraud against Ernst & Young.[5]

### B. The Fiscal 1994 Report

■ Zucker claims that Ernst & Young also acted improperly in connection with its audit of the Fiscal 1994 statement (the "Fiscal 1994 Report"). Zucker asserts that in its Fiscal 1994 Report, Ernst & Young purposefully treated a transaction as a subsequent event in order to avoid disclosing adverse facts about that transaction. In the Fiscal 1994 Report, the sale of an FWM division on April 7, 1995 was treated as a subsequent

event since it occurred shortly after the completion of the Fiscal 1994 Report, dated March 23, 1995. Zucker claims, however, that since the Fiscal 1994 Report was not filed with the SEC until April 28, 1995, Ernst & Young had adequate time to audit the transaction, but intentionally chose not to. Moreover, had Ernst & Young audited the transaction, Zucker claims that Ernst & Young would have realized that the goodwill recorded from the sale was significantly overstated.

The Fiscal 1994 Report cannot form the basis for a securities fraud claim against Ernst & Young since Zucker purchased her stock in June 1994 and the Fiscal 1994 Report was not issued until March 23, 1995. Allegedly false statements made after the named plaintiff's last stock purchase are not actionable because the plaintiff could not possibly have relied on such statements in purchasing the stock. *See Denny v. Barber*, 576 F.2d 465, 468 (2d Cir.1978); *Ernst & Co. v. Marine Midland Bank, N.A.*, 920 F.Supp. 58, 61 (S.D.N.Y.1996); *Fischer v. Tynan*, No. 90 Civ. 7587, 1993 WL 213025, at *2 (S.D.N.Y. June 16, 1993); *Levine v. NL Indus., Inc.*, 720 F.Supp. 305, 308 (S.D.N.Y. 1989), *aff'd*, 926 F.2d 199 (2d Cir.1991).

Zucker's reliance on *Robbins v. Moore Med. Corp.*, 788 F.Supp. 179, 187 (S.D.N.Y. 1992) and *Nicholas v. Poughkeepsie Savings Bank/FSB*, No. 90 Civ. 1607, 1990 WL 145154, at *5 (S.D.N.Y. Sept. 27, 1990) is misplaced. In both cases, a group of defendants with an identity of interests allegedly made a series of "inter-related misstatements" as part of "a common course of conduct." *Robbins v. Moore Med. Corp.*, 788 F.Supp. at 187; *Nicholas v. Poughkeepsie Savings Bank*, 1990 WL 145154, at *5. Moreover, in both cases, the defendants were alleged to have made fraudulent statements both before and after the plaintiff purchased his stock. Under such circumstances, the courts found that the post-purchase statements were relevant to the course of wrongful conduct alleged. *Id.* at *5-*6; *Robbins v.*

---

5. Although the amended complaint is replete with general references to the Fiscal 1993 Report, the only allegation that specifically refers to this report is ¶ 70, which quotes footnote 14. All of Zucker's other allegations, including alleged violations of GAAP and GAAS, appear to be based on events that occurred in Fiscal 1994.

*Moore Med. Corp.*, 788 F.Supp. at 187. In the present case, however, Zucker has failed to allege any fraudulent statements made by Ernst & Young prior to her stock purchase in June 1994. Thus, this case falls squarely within the holding of *Denny v. Barber*, 576 F.2d at 468–69, in which plaintiff's class action was dismissed because it was based entirely on statements made after his stock purchase. In addition, unlike the defendants in Robbins and Nicholas, here, Ernst & Young did not engage in an ongoing course of fraudulent conduct. The only allegations against Ernst & Young involve two independent audit reports issued one year apart.[6]

Likewise, Zucker cannot establish reliance on the Fiscal 1994 Report based on a "fraud-on-the-market" theory. Under this theory, plaintiff may establish reliance by demonstrating that "materially misleading statements have been disseminated into an impersonal, well-developed market for securities" because an investor who trades stock at the market price does so in reliance on the integrity of that price. *Basic Inc. v. Levinson*, 485 U.S. 224, 247, 108 S.Ct. 978, 991–92, 99 L.Ed.2d 194 (1988). This presumption does not apply, however, where a defendant demonstrates that an investment is not causally linked to the alleged misrepresentation. *In re Harcourt Brace Jovanovich, Inc. Sec. Litig.*, 838 F.Supp. 109, 113 (S.D.N.Y.1993). Here, even if Ernst & Young disseminated false information into the market, which resulted in an artificially high stock price, this market effect occurred subsequent to Zucker's stock purchase. Thus, there is no presumption of reliance under the "fraud-on-the-market" theory here since Zucker did not purchase her shares between the time the alleged misrepresentations were made and

the time the truth was revealed. *Basic Inc. v. Levinson*, 485 U.S. at 248, 108 S.Ct. at 992. Since Zucker has failed to plead reliance on the Fiscal 1994 Report, her claims against Ernst & Young cannot be based on the Fiscal 1994 Report.[7]

### C. Violations of Accounting Standards

Because the amended complaint often refers to both the Fiscal 1993 Report and Fiscal 1994 Report simultaneously, it is unclear to what extent Ernst & Young's purported GAAP and GAAS violations are based on the Fiscal 1993 Report.[8] As stated above, it appears that with the exception of the aforementioned "subsequent event" footnote in the Fiscal 1993 Report, all of Zucker's allegations against Ernst & Young are based on events that occurred in Fiscal 1994. For example, Zucker's allegations that Cygne violated GAAP by improperly recognizing revenue and goodwill and failing to write down accounts receivable of doubtful collectibility are based on events and conduct in "the first quarter ended April 29, 1995." Compl. ¶ 137.

In any event, Zucker's general allegations of GAAP and GAAS violations fail to satisfy the scienter requirements of Section 10(b) and Rule 10b–5. The mere misapplication of accounting principles by an independent auditor does not establish scienter. *SEC v. Price Waterhouse*, 797 F.Supp. at 1240. Rather, Zucker must prove that "the accounting practices were so deficient that the audit amounted to no audit at all" or that the accountant's judgments were such that "no reasonable accountant would have made the same decisions if confronted with the same facts." *Id.; see also In re General Elec. Sec. Litig.*, No. 94 Civ. 4024, 1995 WL 590639, at *4 (S.D.N.Y. Oct.4, 1995) (absent

---

**6.** Moreover, the court in Robbins did not discuss Levine, which was affirmed by the Second Circuit "for the reasons stated by the district court." *Levine v. NL Indus., Inc.*, 926 F.2d 199, 204 (2d Cir.1991). In any event, this Court finds more persuasive the reasoning underlying Levine and other cases which have dismissed claims of misrepresentations made after plaintiff Is stock purchase. *See Gross v. Summa Four, Inc.*, 93 F.3d 987, 993 (1st Cir.1996); *Schwartz v. Novo Industri A/S*, 658 F.Supp. 795, 799–800 (S.D.N.Y. 1987). It is impossible to establish reliance, an essential element of actions pursuant to Section

10(b) and Rule 10b–5, on statements which were issued after the purchase of stock.

**7.** Moreover, because Zucker, the named plaintiff, has no standing to assert such claims, she cannot assert them on behalf of a class of shareholders. *Levine v. NL Indus., Inc.*, 720 F.Supp. at 308.

**8.** As discussed above, allegations based on the Fiscal 1994 Report fail to state a claim as a matter of law, given that Zucker's purchased her stock nearly nine months before the report was released.

sufficient allegations of fraudulent intent, purported GAAP violations do not support a securities fraud claim), *aff'd*, 101 F.3d 263 (2d Cir.1996). Zucker's allegations refer simply to violations of basic auditing principles without reference as to how Ernst & Young's violations were the result of intentional deceit or how they rise to the level of recklessness. Therefore, Zucker's claims based on purported GAAP and GAAS violations must be dismissed.

## III. Motion to dismiss pursuant to Rule 9(b)

■ The amended complaint must be dismissed for the additional reason that Zucker's allegations fail to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). The amended complaint is subject to the pleading requirements of Rule 9(b) because securities fraud claims under Section 10(b) and Rule 10b–5 require proof of scienter. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994). The first prong of Rule 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Satisfaction of this element requires that the complaint (1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d at 1175. The second prong of Rule 9(b) states that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Courts in this Circuit have required a plaintiff to allege facts that give rise to a strong inference of fraudulent intent. Id. at 1128; *Aquino v. Trupin*, 833 F.Supp. 336, 341 (S.D.N.Y.1993). There are two ways in which a plaintiff can satisfy this standard: (1) by alleging facts demonstrating a motive for committing fraud and a clear opportunity to do so; or (2) by identifying circumstances indicating conscious or reckless behavior by the defendant. *San Leandro Emergency*

*Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d at 809.

Three recent Second Circuit decisions addressing the standard for pleading scienter in securities fraud actions have made clear that courts in this Circuit should "carefully scrutinize[ ] securities fraud complaints with regard to the sufficiency of allegations of scienter." *In re 1993 Corning Sec. Litig.*, No. 93 Civ. 7015, 1996 WL 257603, at *5 (S.D.N.Y. May 15, 1996).[9]

Ernst & Young argues and this Court agrees that Zucker has failed to satisfy either prong of the aforementioned test. To allege motive and opportunity, Zucker must plead facts demonstrating that Ernst & Young had "the means and likely prospect of achieving concrete benefits by the means alleged." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1130. The amended complaint contains no allegations of motive and makes no suggestion that Ernst & Young received anything other than its usual fees for its work. The Court finds that mere receipt of compensation and the maintenance of a profitable professional business relationship for auditing services does not constitute a sufficient motive for purposes of pleading scienter. *Duncan v. Pencer*, No. 94 Civ. 0321, 1996 WL 19043, at *9–*10 (S.D.N.Y. Jan.18, 1996); *Friedman v. Arizona World Nurseries Ltd. Partnership*, 730 F.Supp. 521, 532 (S.D.N.Y.1990), *aff'd*, 927 F.2d 594 (2d Cir. 1991). To hold otherwise would "effectively abolish the requirement ... of pleading facts which support a strong inference of scienter" against professional defendants. *Duncan v. Pencer*, 1996 WL 19043, at *9. Moreover, a contrary finding would require this Court to assume that Ernst & Young willingly condoned Cygne's fraud in order to preserve its fee, at the risk of jeopardizing its reputation and license as well as the possibility of damages in an amount much greater than its fee. Because this conduct would be economically irrational for Ernst & Young, the Court need not credit such allegations. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d at 1130.[10]

**9.** *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801 (2d Cir.1996); *Acito v. IMCERA Group,*

*Inc.*, 47 F.3d 47 (2d Cir. 1995); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir.1994).

**10.** As such, the Court respectfully disagrees with decisions holding that the receipt of professional

■ In addition, Zucker has failed to allege facts that constitute evidence of recklessness on the part of Ernst & Young. To plead facts establishing a strong inference that defendants engaged in accounting fraud, a plaintiff must specify the improper transactions, explain why such procedures used were improper, and estimate the approximate amount by which the company's finances were misstated. *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 116 (2d Cir. 1982); *Schick v. Ernst & Young*, 808 F.Supp. 1097, 1102 (S.D.N.Y.1992). Moreover, where motive is not alleged and plaintiff relies entirely on allegations of recklessness in asserting scienter, the evidence presented must be proportionally greater. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987) (plaintiff may plead scienter without motive by identifying circumstances indicating conscious behavior by the defendant, "though the strength of the circumstantial evidence must be correspondingly greater"), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Zucker fails to meet this standard.

Zucker claims that during the pre-purchase investigation of FWM's business, Ernst & Young learned that there were serious problems with FWM. Accordingly, Ernst & Young knew or had reason to know that the goodwill and amortization period associated with the FWM acquisition were materially misstated. As stated above, the only facts asserted in the amended complaint that support an inference of such knowledge or reckless disregard are that: (1) the agreement to acquire FWM was signed on or about September 28, 1993, more than six months prior to the completion of the acquisition and the issuance of Ernst & Young's Fiscal 1993 Report; and (2) as Cygne's auditors, Ernst & Young was often present at Cygne headquarters and had access to its confidential documents during the six month period between the signing of the agreement to acquire FWM and the completion of the acquisition.

Thus, Zucker's claim that Ernst & Young knew or recklessly disregarded adverse facts about FWM is, in essence, based solely on Ernst & Young's status as an auditor. As such, it is insufficient. *Griffin v. McNiff*, 744 F.Supp. 1237, 1248–49 n. 11 (S.D.N.Y.1990) (merely alleging that accounting firm qua auditor of company documents must have known or recklessly disregarded true facts is insufficient to support inference of scienter under Rule 9(b)), *aff'd*, 996 F.2d 303 (2d Cir.1993); *O'Brien v. Price Waterhouse*, 740 F.Supp. at 281 (fact that an accounting firm acted as an auditor and financial forecaster to an allegedly fraudulent investment scheme insufficient to create inference of scienter).

Zucker proffers no specific facts as to how or when Ernst & Young learned of or recklessly disregarded FWM's problems and the negative consequences that would ensue from the acquisition. Zucker never states what alleged information was revealed to Ernst & Young, in what form the information was provided, at what point Ernst & Young became aware of it, and from whom Ernst & Young received this information. Accordingly, the claim is insufficient under the pleading requirements of Rule 9(b).[11] *See The Limited, Inc. v. McCrory Corp.*, 683 F.Supp. 387, 394–95 (S.D.N.Y.1988) (10b–5 claim dismissed where plaintiff gave no indication of how or when defendant accountant learned of facts that made the financial statements misleading); *Fahlenbach v. Trans Pacific Capital (USA) Inc.*, No. 95 Civ. 8776, 1996 WL 22602, at *3 (S.D.N.Y. Jan.16, 1996) (dismissing 10b–5 claim that contained no factual allegations demonstrating that defendant knew of company's problems); *Griffin v. McNiff*, 744 F.Supp. at 1250 (10b–5 claim dismissed where there was no factual sup-

fees provides a sufficient motive for the purpose of pleading scienter. *See, e.g., In re Leslie Fay Cos., Inc. Sec. Litig.*, 835 F.Supp. 167, 174 (S.D.N.Y.1993) (accountant-client relationship, in conjunction with an "unlikely degree of mere carelessness" on the part of the accountant gives rise to an inference of motive).

11. In fact, elsewhere in the amended complaint, Zucker alleges that it was not until March 23, 1995—almost one year after the Fiscal 1993 Report was issued—that Cygne and Ernst & Young learned that the FWM acquisition could not provide the earnings necessary to support its valuation. Compl. ¶ 159.

port to infer that alleged fraud was known to accounting firm).[12]

## CONCLUSION

For the reasons set forth above, Ernst & Young's motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) is granted. Zucker's request for leave to file an amended complaint is denied.

SO ORDERED.

---

**12.** Zucker's allegation fails for the additional reason that it assumes that between September 1993, when Cygne agreed to acquire FWM, and April 1994, when the acquisition closed, Cygne learned about serious problems with FWM that made it "unlikely that Cygne would ever recover any of the purchase price for FWM, let alone earn any profit an that acquisition," Pl.'s Mem. of Law, dated May 24, 1996, at 42, but nonetheless proceeded with the acquisition for $44 million. In determining whether motive has been sufficiently alleged, the Court may assume that the defendant is acting in his informed economic self-interest. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994).